# EXHIBIT 1-B

COPY

1  Philip J. Nathanson   Arizona State Bar #013624
   THE NATHANSON LAW FIRM
2  8765 E. Bell Rd. – Suite 101
   Scottsdale, AZ 85260
3  (480) 419-2578
   (480) 419-4136
4  philipj@nathansonlawfirm.com

JUN 1 8 2009


MICHAEL K. JEANES, CLERK
M. SIMPSON
DEPUTY CLERK

5  *Attorney for Defendants*

6       IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
7           IN AND FOR THE COUNTY OF MARICOPA

8  BIONOVIX, INC., a Delaware corporation,    :   No. CV 2009 - 011617
                                              :
9        Plaintiff,                           :
                                              :
10 v.                                         :   **ANSWER TO THE COMPLAINT, AND**
                                              :   **COUNTERCLAIM OF DEFENDANTS**
11 MARCUS LABERTEW aka MARK                   :   **LABERTEW AND MCDERMOTT.**
   LABERTEW and JANE DOE LABERTEW,            :
12 husband and wife; JOHN MCDERMOTT aka       :
   JACK MCDERMOTT and JANE DOE                :
13 MCDERMOTT, husband and wife; SUZY          :
   PARK and JOHN DOE PARK, husband and        :
14 wife; JOHN DOES 1-10; JANE DOES 1-10;      :
   ABC COMPANIES 1-10,                        :
15                                            :
16       Defendants.

17      Defendants,   MARCUS   LABERTEW,   aka   MARK   LABERTEW,   and

18 JOHN MCDERMOTT aka JACK MCDERMOTT, and JANE DOE MCDERMOTT, husband

19 and wife, submit this Answer to the Complaint, and aver as follows:

20                    <u>**PARTIES AND JURISDICTION**</u>

21      1.      BioNovix is a Delaware corporation with its principal place of business in

22 Maricopa County, Arizona.

23      **ANSWER:**   Answering defendants Labertew and McDermott are without

24 sufficient information to form a belief as to the truth of the allegation, and therefore deny

25 said allegation.

2. Upon information and belief, Defendants Marcus Labertew aka Mark Labertew ("Labertew") and Jane Doe Labertew are, and all times relevant have been, husband and wife and residents of Maricopa County, Arizona

**ANSWER:** Defendant Marcus Labertew is divorced.

3. Upon information and belief, Defendants John McDermott aka Jack McDermott ("McDermott") and Jane Doe McDermott are, and all times relevant have been, husband and wife and residents of Maricopa County, Arizona.

**ANSWER:** Defendant John McDermott admits the allegations of paragraph 3.

4. Upon information and belief, Defendants Suzy Park ("Park") and John Doe Park are, and all times relevant have been, husband and wife and resident of the State of California.

**ANSWER:** Answering defendants Labertew and McDermott are without sufficient information to form a belief as to the truth of the allegation, and therefore deny said allegation.

5. All acts of any individual Defendant alleged in the Complaint were performed on the acting Defendant's own behalf and on behalf of his or her marital community.

**ANSWER:** Defendants deny the allegations in paragraph 5.

6. Defendants John Does 1-10, Jane Does 1-10 and ABC Companies are individuals, corporations, partnerships, limited liability companies and other entities whose true names, identities and relationships to the named Defendants are not now known to Plaintiff.

1    **ANSWER:** Answering defendants Labertew and McDermott are without

2    sufficient information to form a belief as to the truth of the allegation, and therefore deny

3    said allegation.

4    7.    Defendants, and each of them, have caused an event to occur in Maricopa

5    County, Arizona out of which Plaintiff's claim arose.

6    **ANSWER:** Defendants deny the allegations in paragraph 7.

7    8.    Jurisdiction and venue are proper in the Court.

8    **ANSWER:** Defendants admit the allegations in paragraph 8.

9    **GENERAL ALLEGATIONS**

10   9.    BioNovix is engaged in the business of distribution and sales of health

11   products. Prior to March 22, 2009, sales of BioNovix's products were accomplished

12   through a multi-level network of Independent Business Consultants ("IBCs") and

13   subsidiary corporations including without limitation a Korean entity known as BioNovix

14   Korea.

15   **ANSWER:** Defendants admit the allegations in paragraph 9.

16   10.   In or prior to February 2008, communications occurred between Labertew

17   and BioNovix regarding Labertew's becoming a management employee of BioNovix. In

18   the course of those communications, Labertew represented himself to be a successful and

19   reputable individual with substantial experience and expertise in corporate management

20   and finance, including specifically multi-level marketing and raising money through

21   lawful private securities offerings.

22   **ANSWER:** Defendant Labertew admits that communications occurred between

23   Labertew and BioNovix regarding many matters. Defendant Labertew denies the

24   remaining allegations and conclusions in paragraph 10.

25   11.   Based upon those representations, BioNovix hired Labertew as its CEO

and CFO, empowering him to run the day-to-day operations of BioNovix and to raise money from investors through lawful private securities offerings, subject to the ultimate authority of BioNovix's Board of Directors (the "Board").

**ANSWER:** Defendant Labertew admits that BioNovix hired Labertew. Defendant Labertew denies the remaining allegations and conclusions in paragraph 11.

12. Labertew continued in his position as set forth above until March 10, 2009, at which time he was terminated from all positions as an officer and employee of BioNovix by action of the Board.

**ANSWER:** Defendant Labertew admits that BioNovix terminated Labertew. Defendant Labertew denies the remaining allegations and conclusions in paragraph 12.

13. McDermott, during relevant periods, was employed by BioNovix purportedly as Executive Vice-President for Sales.

**ANSWER:** McDermott admits that he was employed, but denies that that was his title.

14. McDermott was terminated from all positions as an officer and employee of BioNovix on March 10, 2009.

**ANSWER:** McDermott denies the allegations of paragraph 14.

15. Park, during relevant periods, was a BioNovix IBC.

**ANSWER:** These defendants make no answer to this allegation.

Count One

(Breach of Fiduciary Duty)

16. Plaintiff reiterates each and every foregoing allegations as if set forth in full.

ANSWER: The answering defendants reiterate their answers to the foregoing allegations.

17. As employees and actual or purported officers of BioNovix, Defendants Labertew and McDermott owed BioNovix fiduciary duties of loyalty, honesty and due care.

ANSWER: Defendants admit the duties they owed by law, and deny the remaining allegations of paragraph 17.

18. During the period of their employment by BioNovix, Labertew and McDermott, acting in concert and on one another's behalf, intentionally undertook to, and did, engage in a consistent course of conduct detrimental to the rights and interests of BioNovix, including without limitation (a) misappropriating and diverting for their own personal benefit funds and other tangible and intangible assets of BioNovix and otherwise engaging in self-dealing, (b) destroying tangible and intangible property of BioNovix, and (c) denying BioNovix access to its own computer data and other tangible and intangible property. Without limiting the foregoing:

A. Labertew created and disseminated documents purporting to show himself as the sole officer and director of BioNovix and refused to acknowledge the authority of the Board;

B. Labertew created and filed with governmental agencies, including without limitation the Delaware Secretary of State's office, documents purporting to show himself as the sole officer and director of BioNovix;

C.      Labertew caused BioNovix to fail to pay essential company expenses and obligations, including without limitation (i) license fees and other amounts due under license agreements with Lipoprotein Technologies, Inc. and Bioactives, Inc. (the "Licenses"), (ii) rent, and (iii) payroll obligations;

D.      Labertew, despite multiple requests, refused to permit the Board to conduct an audit of BioNovix's bank accounts and business operations;

E.      Labertew failed to advise the Board of the threatened termination of the Licenses and otherwise failed to properly report to and communicate with the Board;

F.      Shortly prior to March 4, 2009, Labertew and McDermott caused BioNovix's computer system to be "locked" in such a way as to preclude representatives of BioNovix from obtaining access to its own accounting and financial records and other data stored on company computers;

G.      Labertew and McDermott initiated and attempted to carry out a scheme to transfer the business and assets of BioNovix Korea to a new entity owned, wholly or in part, by them;

H.      Labertew and McDermott transferred to Park, for no consideration, property of BioNovix, including but not limited to, approximately 4,300 bottles of XH, and 1,000 cream (the "Company Property").

I.      Upon information and belief, during the period shortly prior to their termination, Labertew and McDermott, in excess of their authority, accessed BioNovix's computer system, directly or through their agents, and copied or printed from the system confidential information (the "Confidential Information") in the form, among other things, of customer and IBC lists, thereafter have sold customer lists and IBC lists to third parties and have otherwise disclosed and used the Confidential Information of their own benefit and that of third parties;

J.     Labertew and McDermott took possession of BioNovix's property (the "Converted Property"), including without limitation the Confidential Information and an Infiniti FX 35, and have refused, despite demand, to surrender such property to BioNovix.

**ANSWER:**     Defendants deny the allegations of paragraph 18, and further deny the allegations contained in paragraphs 18(A) – 18(J).

19.     The conduct of Labertew and McDermott as alleged above was in breach of their fiduciary duties as employees and actual or purported officers of BioNovix.

**ANSWER:**     Defendants deny the allegations of paragraph 19.

20.     As a direct and proximate result of the acts and omissions of Labertew and McDermott set forth above, BioNovix has suffered, and continues to suffer, damages, in the form of loss of use of property, loss of revenues, damages to reputation and otherwise, in amounts not yet determined.

**ANSWER:**     Defendants deny the allegations of paragraph 20.

21.     The conduct of Labertew and McDermott set forth above was intentional, malicious and performed with a conscious intention to injure BioNovix, or with a conscious disregard for the risk of such injury. BioNovix is therefore entitled to an award of punitive damages in an amount sufficient to punish those Defendants and deter such conduct in the future.

**ANSWER:**     Defendants deny the allegations of paragraph 21.

WHEREFORE, Defendants, MARCUS LABERTEW, aka MARK LABERTEW, and JOHN MCDERMOTT aka JACK MCDERMOTT, and JANE DOE MCDERMOTT, husband and wife, and each of them, deny that defendants are guilty of any of the matters alleged, and defendants further deny that plaintiff is entitled to any damages. Defendants ask this Court to enter judgment in their favor.

1  This Reply and Response was sent to the attorney set forth below, via U.S. Mail
2  and email on the 9th day of March, 2011:

3
   Roger L. Cohen
4  Jaburg & Wilk, P.C.
   3200 N. Central Avenue, Suite 2000
5  Phoenix, AZ 85012

6

7  /s/Philip J. Nathanson
   _____
8  Philip J. Nathanson – Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  Philip J. Nathanson (AZ Bar #013624)
2  **THE NATHANSON LAW FIRM**
   8326 E. Hartford, Suite 101
3  Scottsdale, AZ 85255
   (480) 419-2578
4  (480) 419-4136-Fax

5      *Attorney for Plaintiff*

6

            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
7               IN AND FOR THE COUNTY OF MARICOPA

8

9  MARCUS LABERTEW aka MARK          No. CV2010-051209
   LABERTEW; JOHN MCDERMOTT aka
10 JACK MCDERMOTT and JENNIFER       **NOTICE OF FILING THE EXHIBITS**
   MCDERMOTT, husband and wife,      **CITED IN PLAINTIFFS' REPLY IN**
11                                   **SUPPORT OF THEIR MOTION TO**
       Plaintiffs,                   **SET A RULE 16(b)**
12                                   **COMPREHENSIVE PRETRIAL**
                                     **CONFERENCE AND TO**
13 v.                               **CONTINUE CASE ON THE**
                                     **INACTIVE CALENDAR, AND**
14 FRED R. AUZENNE and               **PLAINTIFFS' RESPONSE TO THE**
   LORAL LANGEMEIER,                 **MOTION TO DISMISS FOR**
15                                   **FAILURE TO PROSECUTE.**
       Defendants.
16

17

18     Plaintiffs, MARCUS LABERTEW, *et al.*, by and through their attorney,

19 PHILIP J. NATHANSON of THE NATHANSON LAW FIRM, provide this Notice

20 of Filing the attached exhibits cited in Plaintiffs' Reply in Support of their Motion

21 to Hold a Rule 16(b) Scheduling Conference and to Continue this Case on the

22 Inactive Calendar.

23 DATED THIS 9th day of March, 2011.

24

25

MARCUS LABERTEW, *et al.*,

/s/ Philip J. Nathanson

Arizona State Bar #013624
THE NATHANSON LAW FIRM
8326 E. Hartford, Suite 101
Scottsdale, AZ 85255
(480) 419-2578
(480) 419-4136
philipj@nathansonlawfirm.com

*Attorneys for Plaintiffs*

Roger L. Cohen (004409)
Michelle C. Lombino (016252)
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
RLC@jaburgwilk.com
MCL@jaburgwilk.com
(602) 248-1000

Attorneys for Plaintiff BioNovix, Inc.

COPY

APR 1 4 2009

MICHAEL K. JEANES, CLERK
M. MEJIA
DEPUTY CLERK

**SUPERIOR COURT OF ARIZONA**

**MARICOPA COUNTY** CV2009-011617

| | |
|---|---|
| BIONOVIX, INC., a Delaware corporation, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| MARCUS LABERTEW aka MARK LABERTEW and JANE DOE LABERTEW, husband and wife; JOHN MCDERMOTT aka JACK MCDERMOTT and JANE DOE MCDERMOTT, husband and wife; SUZY PARK and JOHN DOE PARK, husband and wife, JOHN DOES 1-10; JANE DOES 1-10; ABC COMPANIES 1-10, | |
| Defendants. | |

For its Complaint, Plaintiff BioNovix, Inc. ("BioNovix") alleges:

## PARTIES AND JURISDICTION

1.      BioNovix is a Delaware corporation with its principal place of business in Maricopa County, Arizona.

2.      Upon information and belief, Defendants Marcus Labertew aka Mark Labertew ("Labertew") and Jane Doe Labertew are, and all times relevant have been, husband and wife and residents of Maricopa County, Arizona.

3.      Upon information and belief, Defendants John McDermott aka Jack McDermott ("McDermott") and Jane Doe McDermott are, and all times relevant have been, husband and wife and residents of Maricopa County, Arizona.

4.     Upon information and belief, Defendants Suzy Park ("Park") and John Doe Park are, and all times relevant have been, husband and wife and residents of the State of California.

5.     All acts of any individual Defendant alleged in this Complaint were performed on the acting Defendant's own behalf and on behalf of his or her marital community.

6.     Defendants John Does 1-10, Jane Does 1-10 and ABC Companies are individuals, corporations, partnerships, limited liability companies and other entities whose true names, identities and relationships to the named Defendants are not now known to Plaintiff.

7.     Defendants, and each of them, have caused an event to occur in Maricopa County, Arizona out of which Plaintiff's claims arose.

8.     Jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

9.     BioNovix is engaged in the business of distribution and sales of health products.  Prior to March 22, 2009, sales of BioNovix's products were accomplished through a multi-level network of Independent Business Consultants ("IBCs") and subsidiary corporations including without limitation a Korean entity known as BioNovix Korea.

10.     In or prior to February 2008, communications occurred between Labertew and BioNovix regarding Labertew's becoming a management employee of BioNovix.  In the course of those communications, Labertew represented himself to be a successful and reputable individual with substantial experience and expertise in corporate management and finance, including specifically multi-level marketing and raising money through lawful private securities offerings.

11.     Based upon those representations, BioNovix hired Labertew as its CEO and CFO, empowering him to run the day-to-day operations of BioNovix and to raise money

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1  from investors through lawful private securities offerings, subject to the ultimate authority

2  of BioNovix's Board of Directors (the "Board").

3       12.    Labertew continued in his positions as set forth above until March 10, 2009,

4  at which time he was terminated from all positions as an officer and employee of

5  BioNovix by action of the Board.

6       13.    McDermott, during relevant periods, was employed by BioNovix

7  purportedly as Executive Vice-President for Sales.

8       14.    McDermott was terminated from all positions as an officer and employee of

9  BioNovix on March 10, 2009.

10      15.    Park, during relevant periods, was a BioNovix IBC.

## Count One
### (Breach of Fiduciary Duty)

16.    Plaintiff reiterates each and every foregoing allegation as if set forth in full.

17.    As employees and actual or purported officers of BioNovix, Defendants
Labertew and McDermott owed BioNovix fiduciary duties of loyalty, honesty and due
care.

18.    During the period of their employment by BioNovix, Labertew and
McDermott, acting in concert and on one another's behalf, intentionally undertook to, and
did, engage in a consistent course of conduct detrimental to the rights and interests of
BioNovix, including without limitation (a) misappropriating and diverting for their own
personal benefit funds and other tangible and intangible assets of BioNovix and otherwise
engaging in self-dealing, (b) destroying tangible and intangible property of BioNovix, and
(c) denying BioNovix access to its own computer data and other tangible and intangible
property. Without limiting the foregoing:

A.    Labertew created and disseminated documents purporting to show
himself as the sole officer and director of BioNovix and refused to acknowledge the
authority of the Board;

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

716458v1                                3

B.  Labertew created and filed with governmental agencies, including without limitation the Delaware Secretary of State's office, documents purporting to show himself as the sole officer and director of BioNovix;

C.  Labertew caused BioNovix to fail to pay essential company expenses and obligations, including without limitation (i) license fees and other amounts due under license agreements with Lipoprotein Technologies, Inc. and Bioactives, Inc. (the "Licenses"), (ii) rent, and (iii) payroll obligations;

D.  Labertew, despite multiple requests, refused to permit the Board to conduct an audit of BioNovix's bank accounts and business operations;

E.  Labertew failed to advise the Board of the threatened termination of the Licenses and otherwise failed to properly report to and communicate with the Board;

F.  Shortly prior to March 4, 2009, Labertew and McDermott caused BioNovix's computer system to be "locked" in such a way as to preclude representatives of BioNovix from obtaining access to its own accounting and financial records and other data stored on company computers;

G.  Labertew and McDermott initiated and attempted to carry out a scheme to transfer the business and assets of BioNovix Korea to a new entity owned, wholly or in part, by them;

H.  Labertew and McDermott transferred to Park, for no consideration, property of BioNovix, including but not limited to, approximately 4,300 bottles of XH, and 1,000 cream (the "Company Property").

I.  Upon information and belief, during the period shortly prior to their termination, Labertew and McDermott, in excess of their authority, accessed BioNovix's computer system, directly or through their agents, and copied or printed from the system confidential information (the "Confidential Information") in the form, among other things, of customer and IBC lists, and thereafter have sold customer lists and IBC lists to third parties and have otherwise disclosed and used the Confidential Information for their own benefit and that of third parties;

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

J.  Labertew and McDermott took possession of BioNovix's property (the "Converted Property"), including without limitation the Confidential Information and an Infiniti FX 35, and have refused, despite demand, to surrender such property to BioNovix.

19.  The conduct of Labertew and McDermott as alleged above was in breach of their fiduciary duties as employees and actual or purported officers of BioNovix.

20.  As a direct and proximate result of the acts and omissions of Labertew and McDermott set forth above, BioNovix has suffered, and continues to suffer, damages, in the form of loss of use of property, loss of revenues, damage to reputation and otherwise, in amounts not yet determined.

21.  The conduct of Labertew and McDermott set forth above was intentional, malicious and performed with a conscious intention to injure BioNovix, or with a conscious disregard for the risk of such injury.  BioNovix is therefore entitled to an award of punitive damages in an amount sufficient to punish those Defendants and deter such conduct in the future.

WHEREFORE, BioNovix requests Judgment against Defendants Labertew and McDermott, and each of them, as follows:

A.  For special damages in such amounts as may be proved at trial;

B.  For general damages in such amount as may be proved at trial;

C.  For punitive damages in an amount sufficient to punish the above Defendants and deter such conduct in the future;

D.  For its costs;

E.  For interest on the foregoing amounts at the highest legal rate from the date of Judgment until paid in full; and

F.  For such other and further relief as is proper and just.

### Count Two
### (Conversion)

22.  BioNovix reiterates all of the above allegations as if set forth in full.

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Isburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

23. By their acts and omissions as set forth above, Labertew and McDermott took possession of the Converted Property, with the intent to permanently deprive BioNovix of its possession, use and enjoyment.

24. Despite demand, Labertew and McDermott have failed and refused to return the Converted Property to BioNovix.

25. Labertew and McDermott's acts and omissions described above constitute conversion of BioNovix's property.

26. By their acts and omissions as set forth above, Labertew, McDermott, and Park took possession of the Company Property, with the intent to permanently deprive BioNovix of its possession, use and enjoyment.

27. Despite demand, Labertew, McDermott, and Park have failed and refused to return the Company Property to BioNovix.

28. The acts and omissions of Labertew, McDermott and Park described above constitute conversion of BioNovix's property.

29. As a direct and proximate result of the acts and omissions of Labertew, McDermott, and Park set forth above, BioNovix has suffered, and continues to suffer, damages, in the form of loss of use of property, loss of revenues, damage to reputation and otherwise, in amounts not yet determined.

30. Further, Labertew, McDermott and Park are liable to BioNovix for the value of the Converted Property, in an amount to be proven at trial.

31. The conduct of Labertew, McDermott and Park set forth above was intentional, malicious and performed with a conscious intention to injure BioNovix, or with a conscious disregard for the risk of such injury. BioNovix is therefore entitled to an award of punitive damages in an amount sufficient to punish those Defendants and deter such conduct in the future.

WHEREFORE, BioNovix requests Judgment against Defendants Labertew, McDermott and Park, and each of them, as follows:

71.6458v1

6.

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

A.   As to Labertew and McDermott, for the value of the Converted Property;

B.   As to Labertew, McDermott, and Park for the value of the Company Property;

C.   For special damages in such amounts as may be proved at trial;

D.   For general damages in such amount as may be proved at trial;

E.   For punitive damages in an amount sufficient to punish the above Defendants and deter such conduct in the future;

F.   For its costs;

G.   For interest on the foregoing amounts at the highest legal rate from the date of Judgment until paid in full; and

H.   For such other and further relief as is proper and just.

## Count Three
### (Misappropriation of Trade Secrets)

32.   BioNovix reiterates all of the above allegations as if set forth in full.

33.   The Confidential Information constitutes "trade secrets," as defined in the Arizona Uniform Trade Secret Act, A.R.S. §44-401, *et seq.*, in that it (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

34.   The acts and omissions of Labertew and McDermott in removing, copying and using the Confidential Information, as set forth above, constitute willful and malicious misappropriation of BioNovix's trade secrets.

35.   Upon information and belief, unless Labertew and McDermott are enjoined from so doing, Labertew and McDermott will continue to misappropriate BioNovix's trade secrets.

716458v1

7

Rule 26.1 Initial Disclosure Statement, which was due on June 18, 2010, more than two months before the re-emergence of the Health Issues, was never provided to Defendants. Defense counsel contacted Plaintiffs' counsel in this regard and Plaintiffs' counsel stated the Disclosure would be provided by June 28, 2010. Nothing was ever received, however, and nothing further was heard from Plaintiffs' counsel until the filing of Plaintiffs' Motion to Set a Rule 16(b) Comprehensive Pretrial Conference and to Continue Case on the Inactive Calendar.

Plaintiffs have failed to abide by the Non-Prosecution Rules and have offered no legal basis for asserting an exception thereto.

## B. A.R.S. § 12-504(A) DOES NOT APPLY

Nor may Plaintiffs properly rely on A.R.S. §12-504(A) (the "Savings Statute") to extend the re-filing period in this case. Plaintiffs' counsel asserts that the Health Issues are the cause of the complete inactivity in this case and that Plaintiffs themselves bear no fault. (*See* Plaintiffs' Response at unnumbered p. 6). Based on this, he invokes the protections of Savings Statute. (Plaintiffs' Response at unnumbered p. 5). Again, however, Plaintiffs rely on an improper standard for relief.

As explained previously, Plaintiffs' fault, or lack thereof, has no bearing on a dismissal under the Non-Prosecution Rules. See *Panzino*, 196 Ariz. at 445, 999 P.2d at 201. Consistent with that principle, the Arizona courts have made clear that, in order to invoke the Savings Statute, a plaintiff must make the same showing as would be required to prevail on a motion to dismiss for failure to prosecute; specifically, a plaintiff must demonstrate "extraordinary circumstances" justifying relief, and also show that he or she "(1) vigorously prosecuted her case, (2) took reasonable steps to apprise the court of her case's status, (3) will suffer substantial prejudice unless relief is granted, (4) sought relief promptly, and (5) has a meritorious claim." *McKernan v. Dupont*, 192 Ariz. 550, 555, 968 P.2d 623, 628 (App. 1998) *disapproved of on other grounds by Panzino v. City of Phoenix*, 196 Ariz. 442, 999 P.2d 198 (2000) (citing *Jepson,* 164 Ariz. at 270, 792 P.2d at 733)). As discussed in Section B, *supra,* and in the Objection/Motion to Dismiss,

5

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1  Plaintiffs have failed to make any showing whatsoever, on any ground, that would legally

2  justify relief in this case.

3  **C. CONCLUSION**

4        For all of the foregoing reasons, Plaintiff's Motion to Set a Rule 16(b)

5  Comprehensive Pretrial Conference and to Continue Case on the Inactive Calendar should

6  be denied and Defendants' Motion to Dismiss for Failure of Prosecution should be

7  granted.

8        DATED this 15th day of March, 2011.

9

10                                              **JABURG & WILK, P.C.**

11

12                                              /s/ Roger L. Cohen
                                                Roger L. Cohen
13                                              Victoria E. Ames
                                                *Attorneys for Defendants*

14  **ORIGINAL** efiled and **COPY**
    mailed this 15th day of March, 2011 to:
15
16  Philip J. Nathanson
    The Nathanson Law Firm
17  8765 E. Bell Road, Suite 101
    Scottsdale, Arizona 85260
18  *Attorney for Plaintiffs*

19  /s/ Ana M. Canby

20

21

22

23

24

25

26

27

28

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

6

1  Philip J. Nathanson (AZ Bar #013624)
   **THE NATHANSON LAW FIRM**
2  8326 E. Hartford, Suite 101
   Scottsdale, AZ 85255
3  (480) 419-2578
   (480) 419-4136-Fax
4

5      *Attorney for Plaintiff*

6

           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
7              **IN AND FOR THE COUNTY OF MARICOPA**

8

9  MARCUS LABERTEW aka MARK          No.  CV2010-051209
   LABERTEW; JOHN MCDERMOTT aka
10 JACK MCDERMOTT and JENNIFER
   MCDERMOTT, husband and wife,      **PLAINTIFFS' REPLY IN SUPPORT**
11                                    **OF THEIR MOTION TO SET A**
         Plaintiffs,                 **RULE 16(b) COMPREHENSIVE**
12                                    **PRETRIAL CONFERENCE AND TO**
                                      **CONTINUE CASE ON THE**
13 v.                                 **INACTIVE CALENDAR, AND**
                                      **PLAINTIFFS' RESPONSE TO THE**
14 FRED R. AUZENNE and                **MOTION TO DISMISS FOR**
   LORAL LANGEMEIER,                  **FAILURE TO PROSECUTE.**
15
         Defendants.
16

17

18       Plaintiffs, MARCUS LABERTEW, *et al.*, by and through their attorney,

   PHILIP J. NATHANSON of THE NATHANSON LAW FIRM, submit this Reply in
19
   Support of their Motion to Hold a Rule 16(b) Scheduling Conference and to
20
   Continue this Case on the Inactive Calendar, and plaintiffs also respond herein to
21
   the motion to dismiss for failure to prosecute.
22
       1.       This case was filed in March of 2010, alleging claims, *inter alia*, for
23
   defamation, fraud, breach of contract and false arrest, after the corporate claim
24
   brought by Bionovix, Inc., that was filed against the current plaintiffs was stayed
25

due to the bankruptcy of that corporation, Bionovix, Inc. Yet defendants want this Court to believe that nothing has occurred between the parties because of plaintiffs' delay. Defense counsel conveniently fails to mention that these plaintiffs asserted claims as a counterclaim to the corporate claim brought by Bionovix, Inc., in a prior case filed in this Court by the same lawyers, Jaburg & Wilk, which lawyers are defending this case (see attached prior pleadings), and which case stopped when Jaburg & Wilk withdrew and their corporate client and plaintiff, Bionovix, Inc., filed for bankruptcy. The current plaintiffs (then counter-plaintiffs) served the attached written discovery on Jaburg & Wilk in the Bionovix case that the current defense counsel never answered. Plaintiffs have now sued the Bionovix corporate directors and officers responsible for those events, as defense counsel knows. After haling these individuals in court in the Bionovix case, and accusing them of serious misconduct as Bionovix employees, Jaburg & Wilk now wants this Court to dismiss their case.

2.     Plaintiff's counsel has had a family health issue that severely affected his law practice in the time period in question (see attached Declaration).

3.     In addition to and separate and apart from personal and family issues, the case law militates against a dismissal of this case for lack of prosecution. This Court has the discretion to deny the motion to dismiss for lack of prosecution. *Price v. Sunfield*, 57 Ariz. 142, 148, 112 P.2d 210, 212 (1941) (applying an abuse of discretion standard to the dismissal of a case for want of diligence in prosecution); *Craft v. Cannon*, 58 Ariz. 457, 460, 121 P.2d 421, 422

(1942) (finding that the court had abused its discretion when it dismissed a case for lack of diligence in prosecution).

Defense counsel make the argument that plaintiffs have not pursued discovery as of yet in this case. With respect to delays in going forward with discovery, the case law from the Court of Appeals has held that **the ultimate sanction of dismissal is only warranted "when the plaintiff personally shares complicity in the abusive behavior**." *Nesmith v. Superior Court (Chives Rest., Inc.)*, 164 Ariz. 70, 71, 790 P.2d 768, 769 (App.1990)(emphasis added). There is no evidence here that the party plaintiffs are complicit at all in the delays that have occurred here.

Moreover, there is a recognized test for dismissing a case for lack of prosecution. Thus, defendants' motion requesting a dismissal for failure to prosecute must establish that the delay in the case is sufficient, when taken with all the circumstances in the case, to show **"either that the cause of action has been abandoned by plaintiff or else that it has resulted in injury to some one not responsible for the delay**." *Price v. Sunfield*, 57 Ariz. 142, 148, 112 P.2d 210, 212 (1941) (emphasis added). The Supreme Court discussed abandonment in the case of *Paul v. Paul*, 28 Ariz. 598, 238 P. 399 (1925), where the trial judge dismissed the case for lack of prosecution:

> "This action was taken by the court 16 months and 9 days after the case was submitted. The superior court has inherent power to dismiss a case for want of prosecution, and it would appear that the period of 16 months, elapsing since the last action in the case, might indicate an abandonment of the suit on the part of the plaintiff, sufficient to warrant a trial judge in dismissing the case, with notice to plaintiff, for want of prosecution."

In evaluating case activity, trial courts should look at the activities of all parties involved, not just the plaintiff's activities, to decide whether a case is being vigorously and diligently prosecuted. *Jepson v. New,* 164 Ariz. 265, 273, 276, 792 P.2d 728, 736, 739 (1990). Although the record must show a plaintiff is actively pursuing the case, it may be that discovery initiated by other parties benefits that plaintiff as well. *Id.* Rule 38.1, just as former Uniform Rule V

> "… should be used to dispose of **abandoned cases** and to encourage litigants to resolve their disputes quickly. It should not be used to trap the unwary or the momentarily negligent.... [It] should not be used to win a case by avoiding trial on the merits, unless the case, in fact, is not being prosecuted vigorously."

*Id.* at 275, 792 P.2d at 738 (emphasis added).

Defendants themselves point out their own case activity in their motion. Defendants obviously believed that this was an active case in court. Plaintiff has attached the Declaration of plaintiff's counsel in this case regarding the personal situation of plaintiff's counsel, which shows that any delay had nothing to do with plaintiffs and those plaintiffs did not abandon this lawsuit. Defendants have shown no injury from the delays they raise.

In *Craft v. Cannon,* 58 Ariz. 457, 460, 121 P.2d 421, 422 (1942), the Supreme Court found that the trial court had abused its discretion when it dismissed a case after the plaintiff had failed to file a bill of particulars until 431 days after the court's order to do so. 58 Ariz. at 459-60, 121 P.2d at 421-22. Finally, in *W.T. Rawleigh Co. v. Spencer,* 58 Ariz. 182, 184-85, 118 P.2d 674, 675 (1941), the Supreme Court found a nearly three and one-half year period of dormancy to be an

insufficient basis for the dismissal of a suit where the court felt that "both parties [had] nursed the case along with the court's approval."

4.   Defendants argue that plaintiffs must demonstrate to this Court via affidavit and exhibits that this is a meritorious case at this stage of the proceedings.   While plaintiffs disagree that such a legal requirement exits, plaintiffs are willing to make such a showing within seven days of this Court ordering that such a showing should or must be made.

5.   However, if this Court nevertheless decides to dismiss the case for lack of prosecution, then plaintiff asks this Court, *arguendo*, to dismiss the action without prejudice and to permit plaintiff to refile the action within six months of any such dismissal.   There is no doubt that this Court may provide for a six-month refiling period pursuant to Ariz. Rev. Stat. § 12-504(A).   *Perry v. County of Maricopa*, 167 Ariz. 458, 808 P.2d 343 (App. 1991).

Ariz. Rev. Stat. § 12-504(A) provides as follows:

> "If an action is commenced within the time limited for the action, and the action is terminated in any manner other than by abatement, voluntary dismissal, dismissal for lack of prosecution or a final judgment on the merits, the plaintiff, or a successor or personal representative, may commence a new action for the same cause after the expiration of the time so limited and within six months after such termination. If an action timely commenced is terminated by abatement, voluntary dismissal by order of the court or dismissal for lack of prosecution, **the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination**."

(emphasis added).

Plaintiffs bear no fault whatsoever for the current status of this case. Nor do defendants argue that plaintiffs are responsible in any way for the progress of this case. The family health circumstances of plaintiff's counsel do not relate to plaintiffs, and plaintiff's counsel respectfully submits that the individual plaintiffs should not be prejudiced by the difficulties of plaintiff's counsel. If the individual plaintiff's innocence is not enough to keep the current case in court, then plaintiff's counsel requests that plaintiffs be given a six-month refiling period to refile their action, which action may otherwise be barred by the statute of limitations without the presence of such a refiling period. *Schwartz v. Arizona Primary Care Physicians*, 192 Ariz. 290, 964 P.2d 491 (App. 1998).

WHEREFORE, Plaintiffs, MARCUS LABERTEW, *et al.*, request this Court to schedule and hold a Rule 16(b) Comprehensive Pretrial Conference, and to continue this case on the inactive calendar until this Court deems appropriate, for the reasons set forth above. Plaintiffs further ask this Court to deny the motion to dismiss for lack of prosecution.

DATED THIS 9th day of March, 2011.

MARCUS LABERTEW, *et al.*,

/s/Philip J. Nathanson

Arizona State Bar #013624
THE NATHANSON LAW FIRM
8326 E. Hartford, Suite 101
Scottsdale, AZ 85255
(480) 419-2578
(480) 419-4136
philipj@nathansonlawfirm.com

*Attorneys for Plaintiffs*

## DECLARATION OF PHILIP J. NATHANSON

STATE OF ARIZONA      )
                        ) SS
COUNTY OF MARICOPA      )

PHILIP J. NATHANSON, declares and certifies, under the penalty of perjury, pursuant to Ariz. R. Civ. P. 80(i), as follows:

1. I am the plaintiffs' attorney in this Court.

2. Meredith Nathanson is my 37 year-old daughter, and she is an associate attorney at my law firm. Meredith underwent emergent cancer surgery for ovarian cancer, stage III(c), on August 5, 2009, at Northwestern Memorial Hospital, in Chicago, Illinois. Following her recuperation from surgery, Meredith began chemotherapy treatment in August of 2009, and continued to undergo double dosage chemotherapy treatments until mid-December of 2009, where three weeks out of each month she received double-doses of chemotherapy. After her initial chemotherapy regimen, Meredith went into a period of remission. However, in August of 2010, after eight months of remission, tests were performed that showed a recurrence of Meredith's cancer, which recurrence required renewed chemotherapy.

3. After Meredith's chemotherapy sessions ended in August of 2010, she was evaluated for further cancer surgery. I was involved in person in her consultations with her physicians at Northwestern Memorial Hospital in Chicago regarding that surgical decision, which surgery went forward on November 30, 2010. The doctors predicted that the surgery would be major surgery and planned an operation that required two oncological surgeons, a gynecologic oncologist and a general surgical oncologist.

Meredith was in intensive care after the surgery. There were also post-surgical lung complications that extended her stay in the hospital following that surgery. Because I was the attorney in fact pursuant to Meredith's health care power of attorney, I was required to be present during the surgery and hospitalization.

4.    I was also extensively involved with Meredith's decision to seek additional medical evaluations and opinions at MD Anderson Cancer Center in Houston, Texas, prior to that November 30, 2010, surgery, which Houston consultations occurred several weeks before the November 30, 2010, surgery at Northwestern Memorial Hospital in Chicago.

5.    The foregoing family health situation dominated my time in the time frames referenced above.

6.    I have knowledge of the statements in the foregoing Reply and Response, and those statements made in the foregoing Reply and Response, and in the attached affidavit, are true and correct.

FURTHER DECLARANT SAITH NOT, on March 9, 2011.

Philip J. Nathanson

1   While the court gave Plaintiffs and their counsel the benefit of the doubt in denying

2   the first Motion to Dismiss, their continued inaction since the prior ruling demonstrates

3   unequivocally that the case is not being prosecuted in good faith and that dismissal is

4   warranted to avoid continuing prejudice to Defendants.

5   Defendants incorporate by reference all of the legal arguments set forth in their

6   first Motion to Dismiss filed February 24, 2011, and their Reply in support of their first

7   Motion to Dismiss filed March 15, 2011.

8   **II.    CONCLUSION**

9   For the reasons set forth above, Defendants' Renewed Motion to Dismiss for

10  Failure to Prosecute should be granted. Defendants also request that the Court award them

11  their reasonable attorney fees incurred in defending this matter.

12  DATED this 7th day of June, 2011.

13

14                                          **JABURG & WILK, P.C.**

15                                          /s/ Michelle C. Lombino

16                                          _____
                                            Roger L. Cohen
17                                          Michelle C. Lombino
                                            *Attorneys for Defendants*

18  **ORIGINAL E-FILED** and **COPY** of the
    foregoing mailed this 7th day of June,
19  2011 to:

20

21  Philip J. Nathanson
    The Nathanson Law Firm
22  8765 E. Bell Road, Suite 101
    Scottsdale, Arizona 85260
23  *Attorney for Plaintiffs*

24  */s/ Pamela S. Anderson*

25  _____

26

27

28
                                          3

12103-10/MCL/MCL/893202_v1

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

NAME: PHILIP J. NATHANSON

ADDRESS: 8765 E. BELL ROAD, SUITE 101

CITY, STATE, ZIP: SCOTTSDALE, AZ 85260

MICHAEL K. JEANES, CLERK
BY                    DEP
      Marsha Ward
        FILED

10 MAR 11 PM 2: 10

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Marcus Labertew aka Mark Labertew;
John McDermott aka Jack McDermott )
_____ )
                                )
and Jennifer McDermott, husband )
and wife,                       )  NO. **CV2010-051209**
            PLAINTIFF,          )
                                )  CERTIFICATE OF
                                )  COMPULSORY
        vs.                     )  ARBITRATION
                                )
Fred R. Auzenne                 )
_____   )
                                )
Loral Langemeier                )
            DEFENDANT.          )
_____   )

The undersigned certifies that the largest award sought by the

complainant, including punitive damages, but excluding interest,

attorneys' fees, and costs **does** / ~~does not~~ exceed limits set by

Local Rule for compulsory arbitration.  This case ~~is~~/ **is not**

subject to the Uniform Rules of Procedure for Arbitration.

SUBMITTED this _11th_ day of _MARCH_____, 20_10___.

BY _____

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-051209                                                05/02/2011


                                                CLERK OF THE COURT
HONORABLE LINDA H. MILES                        L. Crawford
                                                Deputy



MARCUS LABERTEW, et al.                 PHILIP J NATHANSON

v.

FRED R AUZENNE, et al.                  MICHELLE C LOMBINO




MINUTE ENTRY


The Court has received and considered the following:

1. Plaintiffs' Motion to Set a Rule 16(b) Comprehensive Pretrial Conference and to
   Continue Case on the Inactive Calendar, filed February 15, 2011;

2. Defendants' Objection to Plaintiffs' Motion to Set a Rule 16(b) Comprehensive
   Pretrial Conference and to Continue Case on the Inactive Calendar and Motion to
   Dismiss for Failure of Prosecution, filed February 24, 2011;

3. Plaintiffs' Reply in Support of Their Motion to Set a Rule 16(b) Comprehensive
   Pretrial Conference and to Continue Case on the Inactive Calendar, and Plaintiffs'
   Response to the Motion to Dismiss for Failure to Prosecute, filed March 9, 2011;

4. Plaintiffs' Notice of Filing the Exhibits Cited in Plaintiffs' Reply in Support of
   Their Motion to Set a Rule 16(b) Comprehensive Pretrial Conference and to
   Continue Case on the Inactive Calendar, and Plaintiffs' Response to the Motion
   to Dismiss for Failure to Prosecute, filed March 9, 2011; and

CV 2010-051209                                              05/02/2011

5.  Defendants' Reply in Support of Motion to Dismiss for Failure of Prosecution,
    filed March 15, 2011.

IT IS ORDERED granting Plaintiffs' Motion to Set a Rule 16(b) Comprehensive Pretrial
Conference and to Continue Case on the Inactive Calendar.

IT IS FURTHER ORDERED continuing the case on the Inactive Calendar until the date
of the Comprehensive Pretrial Conference set below.

IT IS FURTHER ORDERED denying Defendants' Motion to Dismiss for Failure of
Prosecution.

IT IS FURTHER ORDERED setting a telephonic Comprehensive Pretrial Conference on
**June 14, 2011 at 8:30 a.m.** (time allotted: 15 minutes) in this Division:

The Honorable Linda H. Miles
Maricopa County Superior Court
Northeast Regional Court Center
18380 N. 40th Street, Courtroom 106
Phoenix, Arizona 85032
(602) 506-6452

Plaintiff shall be responsible for initiating the conference call by calling this Division at
**602-506-6452** with all participating parties and counsel on the line at the date and time specified
above.  Telephonic appearances shall be made from a LANDLINE and **NOT** a cellular phone.

**COUNSEL PARTICIPATING IN THE CONFERENCE CALL SHALL BE
KNOWLEDGEABLE ABOUT THE CASE AND ITS STATUS, AND SHALL HAVE
AUTHORITY TO MAKE DECISIONS ABOUT SCHEDULING AND OTHER
MATTERS RELATED TO THE CASE.**

**NOTE**:  The parties are advised that this Division does not set a trial date until completion
of private mediation or a settlement conference through a Judge pro tem.

**JOINT PRETRIAL CONFERENCE MEMORANDUM**

**IT IS ORDERED**:

CV 2010-051209                                              05/02/2011

Counsel and any self-represented litigants are to meet personally before the Pretrial Conference to discuss those subjects listed under Arizona Rules of Civil Procedure, Rule 16(b) or 16(c) (if a medical malpractice case). The parties shall prepare and file a Joint Pretrial Conference Memorandum **no later than five judicial days before the conference** addressing all applicable subjects listed under Rule 16(b) or 16(c), as applicable, and including proposed discovery and disclosure deadlines. Proposed dates in the memorandum shall be stated as **dates certain** (e.g., January 5, 2011) and not, for example, as "90 days before trial."

**The Joint Pretrial Conference Memorandum shall begin with a brief description of the nature of the case and the contested issues, as well as the estimated length of the trial. In addition, it shall include deadlines for the disclosure of expert and non-expert witnesses and an agreed-upon schedule for completion of discovery. As far as can reasonably be anticipated, each party shall set forth the depositions they anticipate taking and the approximate time required for each; any and all medical examinations which may be required of any of the parties; the person or persons to conduct such examinations; all requests for production; and all tangible evidence to be disclosed or exchanged.**

If the parties agree to the deadline dates, they shall prepare a proposed scheduling Order in the form set forth below, containing the provisions which are applicable to the case. If the parties are unable to agree on any of the provisions that are to be included in the Order, the reasons for their inability to agree shall be set forth in the Joint Pretrial Conference Memorandum, and the parties shall submit a proposed Order without dates included.

If a Joint Pretrial Conference Memorandum is not timely submitted, the Court will place the matter on the Inactive Calendar for dismissal. Counsel are reminded that the Court may impose sanctions against counsel and/or the parties for failure to participate in good faith in the Joint Pretrial Conference Memorandum or the Pretrial Conference.

**NOTE:** If the Joint Pretrial Conference Memorandum and proposed form of order are eFiled, the proposed form of order must be submitted in Word format, **not PDF or Word Perfect format**, to enable the Court to make changes/corrections thereto.

**PROPOSED LANGUAGE FOR ORDER:**

The Court has received and reviewed the parties' Joint Pretrial Conference Memorandum. In accordance therewith,

**IT IS ORDERED:**

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-051209                                          05/02/2011

1. Plaintiff's final expert witness disclosure (in accordance with Ariz.R.Civ.P., Rule 26.1 (a)(6)) shall be served by          , **2011.**

2. Defendant's final expert witness disclosures (in accordance with Ariz.R.Civ.P., Rule 26.1 (a)(6)) shall be served by          , **2011.**

3. Any rebuttal expert witness disclosures (in accordance with Ariz.R.Civ.P., Rule 26.1 (a)(6)) shall be served by          , **2011.**

4. Final non-expert witness disclosures (in accordance with Ariz.R.Civ.P., Rule 26.1 (a)(3)) shall be served by          , **2011.**

5. All discovery shall be completed by          , **2011.** Any written discovery must be propounded far enough in advance of this date to allow for responses to be served in accordance with the Rules prior to this date.

6. The parties shall participate in private mediation by          , **2011.**

**OR**

The parties shall participate in a mandatory Settlement Conference. This matter is referred to the Court's Alternative Dispute Resolution Office for the appointment of a judge *pro tempore* to conduct a settlement conference. **Counsel and/or the parties will receive a minute entry from ADR appointing the Judge pro tempore.** Counsel and any self-represented litigants shall contact the appointed judge *pro tempore* to arrange the date, time and location for the settlement conference. The judge *pro tempore* is requested to conduct a settlement conference not later than          , **2011.** The Office of Alternative Dispute Resolution will not do the scheduling of the settlement conference so please do not contact that office.

7. All dispositive or partially dispositive motions shall be filed by          , **2011.**

8. No expert witnesses, expert opinions, lay witnesses, or exhibits shall be allowed at trial other than those disclosed in a timely manner, except for good cause shown or by written agreement of the parties.

9. A telephonic status conference is set for          , **2011 at**          **m.** for the purpose of assigning a trial date if the case has not settled.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-051209                                    05/02/2011

**NOTE:** Plaintiff shall be responsible for initiating the conference call by calling this Division at **602-506-6452**, with all participating parties and counsel on the line, at the date and time specified above.

10. Should any discovery disputes arise, any party seeking a discovery order shall, prior to filing discovery motions, meet and confer pursuant to Ariz.R.Civ.P., Rule 37(a)(2)(C). Counsel are advised that, as the Court interprets Rule 37(a)(2)(C), an exchange of correspondence between counsel is **not** sufficient to satisfy the "personal consultation" requirement of the Rule, except in extraordinary circumstances. At a minimum, counsel must speak to each other by telephone to attempt to resolve the dispute in good faith before involving the Court. Counsel are further advised that after the personal consultation referenced above, the Court is available to discuss, by joint telephone call, discovery disputes or any other matter that may impact the parties' ability to resolve this case in a just, speedy and inexpensive manner. See Rule 1, Ariz.R.Civ.P.

11. The dates set forth in this Order are FIRM dates and will not be extended or modified by this Court absent good cause. Lack of preparation will not ordinarily be considered good cause.

12. This case is removed from the Inactive Calendar and all requirements of Rule 38.1, Ariz.R.Civ.P., are waived until otherwise ordered by the Court.

ALERT: eFiling through AZTurboCourt.gov is mandatory in civil cases for attorney-filed documents effective May 1, 2011. See Arizona Supreme Court Administrative Orders 2010-117 and 2011-010. The Court may impose sanctions against counsel to ensure compliance with this requirement after May 1, 2011.

Docket Code 084                    Form V000A                    Page 5

Roger L. Cohen (004409)
Victoria E. Ames (027163)
**JABURG & WILK, P.C.**
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
rlc@jaburgwilk.com
vea@jaburgwilk.com
(602) 248-1000
*Attorneys for Defendants Fred R. Auzenne and Loral Langemeier*

**SUPERIOR COURT OF ARIZONA**

**MARICOPA COUNTY**

|  |  |
|---|---|
| MARCUS LABERTEW aka MARK LABERTEW and JANE DOE LABERTEW, husband and wife; JOHN MCDERMOTT aka JACK MCDERMOTT and JENNIFER MCDERMOTT, husband and wife | Case No. CV2010-051209 |
|                                  Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE OF PROSECUTION** |
| v. | (Assigned to Hon. Linda Miles) |
| FRED R. AUZENNE and LORAL LANGEMEIER, |  |
|                                  Defendants. |  |

        Defendants Fred R. Auzenne and Loral Langemeier submit this Reply in Support of Defendants' Motion to Dismiss for Failure of Prosecution. Although Defendants appreciate the tragic and emotional circumstances with which Plaintiffs' counsel struggled between August 2010 and November 2010 as outlined in his Declaration ("Declaration") attached to Plaintiffs Reply in Support of Motion to Set a Rule 16(b) Comprehensive Pretrial Conference and to Continue Case on the Inactive Calendar, and Response to the Motion to Dismiss for Failure to Prosecute, the facts provide no legal excuse for Plaintiffs' complete and utter failure to pursue this matter for the five months prior to the re-emergence of the family health problems identified in the Declaration (the "Health Issues"), nor have Plaintiffs offered any reasons for the absolute lack of communication

**Jaburg & Wilk, P.C.**
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

with defense counsel or the court for the entire eleven month period prior to the date of dismissal,[1] including the five months before and the three months after the Health Issues predominated Plaintiff's counsel's attention. There simply is no legal basis for permitting this case to remain on the Court's calendar.

## A. CASE LAW SUPPORTS DISMISSAL

For reasons fully set forth in Defendants Objection to Plaintiff's Motion to Set Rule 16(b) Comprehensive Pretrial Conference and Motion to Dismiss for Failure of Prosecution (the "Objection/Motion to Dismiss"), this case is properly subject to dismissal for failure of prosecution pursuant to Arizona Rule of Civil Procedure ("Rule") 38.1(d)[2] and Local Rule of Practice of the Superior Court, Maricopa County ("Local Rule") 3.6 (collectively the "Non-Prosecution Rules"). Although Plaintiffs correctly state that this Court has discretion to determine if a case should be dismissed for failure of prosecution, they apply the wrong test.

The proper test for determining whether to dismiss a case for lack of prosecution is stated in *Jepson v. New*, 164 Ariz. 265, 270, 792 P.2d 728, 733 (1990). First, the court's discretion can only be exercised where good cause is shown; i.e., there must be some showing of "extraordinary circumstances of hardship or injustice justifying relief" by the moving party. *Id.* Next, the plaintiff must show "1) vigorous pursuit of the case, 2) steps taken to inform the court of the case's status, and 3) prejudice to the moving party, such as running of the statute of limitations." *Id.* (citing *Gorman v. City of Phoenix*, 152 Ariz. 179, 183, 731 P.2d 74, 78 (1987) (applying Uniform Rule V, the predecessor to Rule 38.1)). In addition, the movant must demonstrate that the continuance was sought promptly and that the claims asserted are meritorious. *Id.*

---

[1] Had Plaintiffs' counsel contacted defense counsel after learning of the identified Health Problems, defense counsel certainly would have permitted reasonable accommodations to deal with these matters; but not a single phone call, email, or other communication was ever received.
[2] The predecessor to Rule 38.1 was Rule V of the Uniform Rules of Practice of the Superior Court. *See* Ariz.R.Civ.P. 38.1, State Bar Committee Note, 2000 Amendment.

2

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

As outlined in the Objection/Motion to Dismiss, Plaintiffs have completely failed to demonstrate any pursuit of the case, much less a vigorous one; they have taken no steps to communicate with either defense counsel or the court; and, other than a fleeting and unexplained reference to the statute of limitations, they have not addressed the issue of prejudice at all. (*See* Plaintiffs' Response at unnumbered p. 5 ("[Plaintiffs] action *may* otherwise be barred by the statute of limitations without the presence of such a refilling period.")). For these reasons, the case should be dismissed.

Plaintiffs attempt to avoid these glaring deficiencies by cobbling together a test that does not apply in this situation. They first cite *Nesmith v. Superior Court In & For County of Maricopa* to argue that "the ultimate sanction of dismissal is only warranted 'when the plaintiff personally shares complicity in the abusive behavior.'" 164 Ariz. 70, 71, 790 P.2d 768, 769 (App. 1990) (*See* Plaintiffs Response at p. 3, unnumbered in Plaintiffs' Response). *Nesmith*, however, dealt with discovery under Rule 34, and the consequences of failure to comply therewith under Rule 37; not a failure to prosecute under Rule 38.1 or Local Rule 3.6. *Id.* Notably, Rule 37 specifically considers the conduct of "*a party or attorney*" to the proceeding. *See* Ariz.R.Civ.P. 37(b), (c), (d); *see also*, *Wayne Cook Enterprises, Inc. v. Fain Properties Ltd. P'ship*, 196 Ariz. 146, 148, 993 P.2d 1110, 1112 (App. 1999) (finding that before imposing dismissal as a sanction for discovery abuse, the court must find the party personally culpable based on language of the rule which states "a party or attorney"). Conversely, Rule 38.1 and Local Rule 3.6 speak directly to the conduct of "*counsel*," without any suggestion that a plaintiff's conduct is even to be considered before a violation of the Non-Prosecution Rules are found. *See* Ariz.R.Civ.P. 38.1 ("In every civil case, *counsel* for plaintiff shall . . . file a Motion to Set and Certificate of Readiness.") (Emphasis added.) Because Defendants seek dismissal pursuant to the Non-Prosecution Rules, which refer specifically to the conduct of counsel, and not the conduct of Plaintiffs, *Nesmith* is inapposite.

Nor is there any anomaly or unfairness in this outcome. As a general rule, an attorney's inexcusable neglect is chargeable to his client. *Panzino v. City of Phoenix*, 196

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

3

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1  Ariz. 442, 445, 999 P.2d 198, 201 (2000). Although some courts have granted relief when

2  an attorney's conduct is so egregious as to amount to abandonment of his client; Arizona

3  has specifically disapproved of this "positive misconduct rule." *See Id.* (expressly

4  rejecting the positive misconduct rule as against public policy).

5        Plaintiffs' next cite *Price v. Sunfield*; their reliance here is equally misplaced. 57

6  Ariz. 142, 148, 112 P.2d 210, 212 (1941). The plaintiff in *Price* sought dismissal based

7  on the common law doctrine of laches, not on a violation of the Non-Prosecution Rules.[3]

8  As with Rule 37 considered in *Nesmith*, the conduct of the plaintiff when laches is

9  claimed is material because the "reason for a dismissal on the ground of laches" is

10  "abanon[ment] by plaintiff." *Id.* As stated previously, a plaintiff's conduct is not

11  implicated by the Non-Prosecution Rules at issue here.

12        Finally, Plaintiffs seek solace in *Craft v. Cannon,* 58 Ariz. 457, 460, 121 P.2d 421,

13  422 (1942). This too is of no avail. In *Craft*, the court expressly found that plaintiff had

14  asked for a trial date as soon as possible, but was not served with a demand for bill of

15  particulars until immediately before the trial, requiring the trial to be continued. *Id.* The

16  court then inexplicably continued the trial indefinitely to allow defendant to revise the bill

17  of particulars. *Id.* Plaintiff immediately requested another trial date, which the court

18  refused, thus stalling any further action on the matter until the court took action upon the

19  bill of particulars which was to be submitted by defendants without time limitation. *Id.*

20  The *Craft* court emphasized that under such circumstances "plaintiff was *unusually*

21  *diligent and active* in his efforts to have the case tried." *Id.*

22        That is not the case here. There is nothing that shows any effort whatsoever from

23  Plaintiff's counsel to pursue this matter. A full five months elapsed from the filing of this

24  matter until the re-emergence of the Health Issues, and another two months or more

25  elapsed after the Health Issues had been stabilized; yet not a single communication was

26  initiated by Plaintiffs' counsel either to defense counsel or to the court. Even Plaintiffs'

27

28

---

[3] Even there the court noted that the "general rule is that it is the duty of the plaintiff to see that his case is brought up for trial within a reasonable time." *Price v. Sunfield*, Id. at 148, 112 P.2d at 212.

4

1  | Philip J. Nathanson (AZ Bar #013624)
2  | **THE NATHANSON LAW FIRM**
   | 8326 E. HARTFORD DR., SUITE 101
3  | SCOTTSDALE, AZ 85255
   | (480) 419-2578
4  | (480) 419-4136-Fax

5  | *Attorney for Plaintiff*

6  | IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
   | IN AND FOR THE COUNTY OF MARICOPA
7  |

8  | MARCUS LABERTEW aka MARK
   | LABERTEW; JOHN MCDERMOTT aka         No. CV2010-051209
9  | JACK MCDERMOTT and JENNIFER
   | MCDERMOTT, husband and wife,         **PLAINTIFFS' MOTION TO RE-SET**
10 |                                      **AND RESCHEDULE THE RULE**
   |        Plaintiffs,                   **16(b) COMPREHENSIVE PRETRIAL**
11 |                                      **CONFERENCE SET FOR JUNE 14,**
   |                                      **2011.**
12 | v.

13 | FRED R. AUZENNE and
   | LORAL LANGEMEIER,
14 |

15 |        Defendants.

16 |

17 |        Plaintiffs, MARCUS LABERTEW, *et al.*, by and through their attorney,

18 | PHILIP J. NATHANSON of THE NATHANSON LAW FIRM, move this Court to

19 | re-set and reschedule the June 14, 2011, Comprehensive Pretrial Rule 16(b)

20 | Conference, for ten days, and to Continue this Case on the Inactive Calendar.

21 |        1.      This case alleges claims, *inter alia,* for defamation, fraud, breach of

22 | contract and false arrest.

23 |        2.      Pursuant to plaintiffs' motion, this Court set the matter for June 14,

24 | 2011, for a comprehensive pretrial settlement conference.

25 |

3.     Plaintiffs were supposed to confer with defense counsel and jointly prepare a memorandum and proposed scheduling order and submit same to the Court five court days prior to the Pretrial Conference.

4.     For the reasons set forth in the attached Declaration, plaintiff was unable to confer with defense counsel, and apologizes to the Court for the failure to do so.

5.     Defense counsel takes the position that they could not confer with plaintiffs' counsel without first receiving the Plaintiffs' Rule 26 Disclosures (see attached email from Defense Counsel).  While this Court did not condition the Pretrial Conference on plaintiffs first providing those disclosures, plaintiffs can and will submit those Rule 26 disclosures to defense counsel on Wednesday, June 15, 2011, and will simultaneously submit the Rule 16 draft memorandum and draft order to defense counsel on that date as well.   Extensive work has been done on those disclosures.   The Plaintiffs themselves have created detailed and extensive statements of fact, and documentary support for those statements of fact, to be included in the upcoming Rule 26 disclosures.

WHEREFORE, Plaintiff, MARCUS LABERTEW, *et al.*, request this Court to re-set and re-schedule the Comprehensive Rule 16(b) Pretrial Conference for ten days, and permit plaintiff to submit a draft pretrial memorandum and proposed order, along with Rule 26 Disclosures, on June 15, 2011, and to continue this case on the inactive calendar until this Court deems appropriate, for the reasons set forth above.

DATED THIS 13th day of June, 2011.

MARCUS LABERTEW, *et al.*,

/s/Philip J. Nathanson

Arizona State Bar #013624
THE NATHANSON LAW FIRM
8765 E. Bell Rd. – Suite 110
Scottsdale, AZ  85260
(480) 419-2578
(480) 419-4136
philipj@nathansonlawfirm.com

*Attorneys for Plaintiff*

# DECLARATION OF PHILIP J. NATHANSON

STATE OF ARIZONA      )
                           ) SS
COUNTY OF MARICOPA    )

PHILIP J. NATHANSON, declares and certifies, under the penalty of perjury, pursuant to Ariz. R. Civ. P. 80(i), as follows:

1. I am the plaintiffs' attorney in this Court.

2. I filed and acted as lead counsel in the medical malpractice case of *Akens v. Rush-Copley Hospital, et al.*, case no. 06 LK 503, a death case involving the puncturing of an artery during an angiography procedure, which resulted in the ensuing exsangunation of the decedent following the perforation of the artery. The expert deposition of the plaintiff's nursing expert, Nurse Paine, occurred in San Diego, CA, on June 3rd, and the expert deposition of plaintiff's cardiology expert, Dr. Sanborn, occurred in Evanston, Illinois, on June 8th. I attended both depositions and was extensively involved from Saturday June 4th to June 8th in the preparation of Dr. Sanborn for his expert deposition.

3. I am plaintiff's lead trial and appellate counsel in the case of *Missner v. Clifford*, case no. 06 L 12632; 914 N.E.2d 540 (2009). The defendant noticed and took the deposition of a retired FBI agent on Friday, June 10th whose affidavit forms the crux of the defamation case before the court. I attended that deposition and cross-examined the FBI agent at the conclusion of the deposition.

6. I have knowledge of the statements in the foregoing Motion, and those statements made in the foregoing Motion, and in this Declaration, are true and correct.

FURTHER DECLARANT SAITH NOT, June 13, 2011.

Philip J. Nathanson

From: "Michelle C. Lombino" <mcl@jaburgwilk.com>
Date: June 13, 2011 12:03:21 PM MST
To: "Philip Nathanson" <philipj@nathansonlawfirm.com>
Cc: "Roger L. Cohen" <rlc@jaburgwilk.com>, "Pamela S. Anderson"
<psa@jaburgwilk.com>
**Subject: RE: Labertew**

Dear Phil,

   A year ago, you promised that you would provide me with Plaintiffs' Rule
26.1 Disclosures by June 28, 2010. You didn't keep that promise.

   Six weeks ago, the Court ordered the parties to file a Joint Pretrial
Memorandum by June 7. Despite the Court's order, you still failed to provide
us with the Rule 26.1 Disclosures. Plaintiffs' Disclosures are critical to
Defendants' ability to negotiate realistic discovery deadlines. To suggest
deadlines without those disclosures is like shooting in the dark, and
prejudicial to defendants. Accordingly, we have filed a Renewed Motion to
Dismiss for failure to prosecute. Any discussions at this point in time are a
day late and a dollar short.

Michelle C. Lombino
JABURG & WILK, P.C.
3200 N. Central Ave., Suite 2000
Phoenix, Arizona 85012
602/ 248-1027
mcl@jaburgwilk.com
www.jaburgwilk.com

This communication is intended only for the individual or entity to whom it is
directed. It may contain information that is privileged, confidential, or otherwise
exempt from disclosure under applicable law. Dissemination, distribution, or
copying of this communication by anyone other than the intended recipient, or a
duly designated employee or agent of such recipient, is prohibited. If you have
received this communication in error, please notify us immediately by telephone at
(602) 248-1000, or via e-mail, and delete this message and all attachments thereto.

**From:** Philip Nathanson [mailto:philipj@nathansonlawfirm.com]
**Sent:** Monday, June 13, 2011 9:37 AM
**To:** Michelle C. Lombino
**Subject:** Labertew

Can we discuss this morning proposed case management dates?

**Philip J. Nathanson**
*Licensed in Illinois & Arizona*

THE NATHANSON LAW FIRM
*Phoenix * Chicago*


120 N. LaSalle Street, Suite 1000
Chicago, IL 60602
(312) 782-3322
(312) 782-4518 fax


8326 E. Hartford Dr., Suite 101
Scottsdale, Arizona 85255
(480) 419-2578
(480) 419-4136 fax

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

This Motion was sent to Judge Miles via fax, and the attorney set forth below via fax and email, on the 13th day of June, 2011:

Roger L. Cohen
Michelle C. Lombino
Jaburg & Wilk, P.C.
3200 N. Central Avenue, Suite 2000
Phoenix, AZ 85012


/s/Philip J. Nathanson
_____
Philip J. Nathanson – Attorney for Plaintiff

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Dorotha Stephens
Filing ID 901321
6/7/2011 2:49:00 PM

1  Roger L. Cohen (004409)
   Michelle Lombino (016252)
2  **JABURG & WILK, P.C.**
   3200 N. Central Avenue, Suite 2000
3  Phoenix, Arizona 85012
   rlc@jaburgwilk.com
4  mcl@jaburgwilk.com
   (602) 248-1000
5

6  *Attorneys for Defendants Fred R. Auzenne and Loral Langemeier*

7

8

9              **SUPERIOR COURT OF ARIZONA**

10                **MARICOPA COUNTY**

11 | MARCUS LABERTEW aka MARK | Case No. CV2010-051209
   | LABERTEW and JANE DOE
12 | LABERTEW, husband and wife; JOHN
   | MCDERMOTT aka JACK MCDERMOTT | **RENEWED MOTION TO DISMISS**
13 | and JENNIFER MCDERMOTT, husband | **FOR FAILURE OF PROSECUTION**
   | and wife
14 |              Plaintiff,
15 |                                        | (Assigned to Hon. Linda Miles)
   | v.
16 |
   | FRED R. AUZENNE and
17 | LORAL LANGEMEIER,
18 |              Defendants.

19        Pursuant the Local Rule of Practice of the Superior Court, Maricopa County

20 ("Local Rule") 3.6, Defendants Fred R. Auzenne and Loral Langemeier renew their

21 motion for an order dismissing this matter for failure of prosecution. This Motion is

22 supported by the attached Memorandum of Points and Authorities and the record before

23 the Court.

24        <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

25 **I.      FACTUAL AND PROCEDURAL BACKGROUND**

26        On March 11, 2010, Plaintiffs filed the Complaint in this matter, alleging claims

27 for Defamation; Fraud; Breach of Contract and Unpaid Wages; and False Arrest, False

28 Imprisonment and Malicious Prosecution. Defendants timely filed their Answer to the

12103-10/MCL/MCL/893202_v1

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1 Complaint on May 3, 2010. In accordance with Arizona Rule of Civil Procedure 26.1,
2 Defendants then submitted their Disclosure Statement to Plaintiffs on June 18, 2010. No
3 Disclosure was ever received from Plaintiffs, despite Plaintiffs' assertion that a Disclosure
4 Statement would be provided by June 28, 2010. On August 18, 2010, this Court issued
5 both a 100 Day Notice and a 150 Day Notice (together the "Notices") to the parties. The
6 150 Day Notice specifically stated that "Rule 38.1 of the Arizona Rules of Civil
7 Procedure will be strictly enforced" and required that a Motion to Set and Certification of
8 Readiness "shall be filed on or before 12/6/2010." The 150 Day Notice goes on to state
9 that "if Rule 38.1 is not complied with, the case will be placed on the Inactive Calendar on
10 [12/6/2010] . . . and it will be dismissed pursuant to Rule 38.1, without further notice, on
11 or after 2/4/2011."

12 More than eleven months after the Complaint was filed, nearly 6 months after the
13 Notices were issued, and almost two weeks after the proposed date of dismissal had
14 passed, Plaintiffs sought to revive their Complaint by requesting a Rule 16(b)
15 comprehensive pretrial conference and continuation on the inactive calendar (the "Motion
16 to Set"). On February 24, 2-011, Defendants filed their Objection to the Motion to Set,
17 and Motion to Dismiss this action for failure to prosecute (the "Motion to Dismiss").
18 Plaintiffs opposed Defendants' Motion to Dismiss, arguing that Plaintiffs' counsel had
19 family health issues that affected his practice, and that Plaintiffs bore no fault for the
20 delay.

21 On May 2, 2011, this Court entered a Minute Entry (i) granting the Motion to Set;
22 (ii) continuing the case on the inactive calendar until June 14, 2011; (iii) denying the
23 Motion to Dismiss; (iv) scheduling a Comprehensive Pretrial Conference for June 14,
24 2011; and (v) ordering the parties to file by today's date, a Joint Pretrial Conference
25 Memorandum, including deadlines for discovery. Despite the Court's Minute Entry,
26 Plaintiffs still have not provided Defendants with their initial disclosures under Arizona
27 Rule of Civil Procedure 26.1, nor have they contacted Defendants to discuss this case or
28 proposed discovery schedules.

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

2

BioNovix. McDermott was terminated by BioNovix at the same time Labertew was.

During their employment, Plaintiffs were businessmen working for BioNovix, Inc.

Plaintiffs were persons of good name and reputation in the business community which they concentrated and were held in high esteem by and among their professional colleagues, customers, vendors and the general public.

During its employment of plaintiffs, and thereafter, defendants made, issued and published defamatory statements, wherein defendants maliciously and wrongfully stated to public, to customers, to distributors, shareholders and vendors that plaintiffs had, in the course of their employment with defendants converted corporate assets, and stolen other person's funds, taken the products and funds that belonged to the distributors and acted in a disloyal and unprofessional manner toward BioNovix.

Defendants either knew that those statements were false, or defendants proceeded to make those statements in reckless disregard of their truth or falsity. Defendants failed to make proper inquiry of plaintiffs or otherwise before publishing those statements; and, in the publication of said defamatory statements, defendants showed actual malice, spite and ill-will toward plaintiffs.

As a direct and proximate result of one or more of the aforesaid acts of the defendants, and the publication of said defamatory statements, plaintiffs have been, and are, jeopardized in their employment, reputation and standing; and they have sustained financial loss in their profession and occupations as businessmen. Plaintiffs have been obliged to consult legal counsel with respect to their employment and other matters arising therefrom,

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

3

and they have necessarily paid or obligated themselves to pay large sums therefor. Plaintiffs have been severely and permanently injured in their reputation and good standing in the business community; and they will in the future have a diminished earning capacity as a result of the slander/defamation *per se* committed by defendants.

It is actually the Defendants who have showed lack of character. Both Defendants have been sued by individuals regarding "schemes," fraud and patent infringement and have had multiple complaints against them.

Defendants induced plaintiffs, Labertew and McDermott, to become employed by BioNovix, Inc. and to remain employed, by means of the misrepresentations. The first misrepresentation was that Defendants did not have any financial difficulties, and that it had sufficient capital, when in fact the company was grossly undercapitalized and always in need of raising new funds from new investors. There was barely enough money at times to pay the vendors, who had to be paid first along with the employees and distributors. After receiving his first paycheck, Labertew did not receive regular paychecks, and McDermott also was not paid regularly and was owed large sums of money for unpaid wages.

The second misrepresentation was that the Board of Directors functioned appropriately and efficiently, when in fact it could not even run a meeting properly. The company was not engaging in any financial improprieties, when in fact some of the directors and officers: (i) took excessive fees exceeding $750,000 per year; (ii) purchased an airplane with corporate funds; (iii) Loral had BioNovix purchase over $100,000 of her

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

4

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1    <u>Live out Load</u> CD's and books; (iv) commingled corporate funds with their personal bank

2    accounts; and (v) received $5,000 a month for a condominium that they personally owned.

3

4    The foregoing misrepresentations proximately caused the plaintiffs to suffer

5    financial injury, including unpaid salary, unreimbursed expenses and loss of financial

6    opportunities.

7    Defendants' fraud was deliberate, willful and malicious, thereby requiring the

8    imposition of punitive damages to punish and deter the foregoing conduct.

9

10   Labertew was owed many months of salary plus at least $50,000 in unreimbursed

11   credit card charges that he incurred for the benefit of the business and that constituted

12   appropriate business expenses.

13

14   McDermott was owed many months of salary plus unreimbursed credit card

15   charges that he incurred for the benefit of the business and that constituted appropriate

16   business expenses.

17   Defendants repeatedly promised to pay these amounts due to both plaintiffs, but

18   failed and refused to do so.

19

20   Plaintiff, McDermott, was sent to South Korea by defendant, BioNovix, to address

21   structural and business compliance issues with the BioNovix Korea affiliated entity.

22   As a result of the Korea direct sales law, defendants were having problems with

23   Korean distributors, which problems defendants falsely attributed to plaintiff McDermott

24   by telling those Korean distributors that their lack of receipt of funds was attributable to

25   plaintiff McDermott. The actual truth was plaintiff was attempting to solve the problems

26   in Korea created by defendants.

27

28

5

As a result of the foregoing, defendants caused plaintiff to be arrested and charged with a crime in Korea. There was no probable cause to arrest plaintiff.

**Defendant's Position:**

**A.      Count 1 – Defamation.**

The statements alleged to have been made about Plaintiffs as set forth in Paragraph 13 of the Complaint are true, and therefore are not actionable.[1]

The statement that Plaintiffs "acted in a disloyal and unprofessional manner toward BioNovix" is a statement of opinion and is not actionable.[2]

The statements alleged to have been made about Plaintiffs as set forth in Paragraph 13 of the Complaint were made in the course of a judicial proceeding and therefore are not actionable.[3]

The one-year statute of limitations for defamation claims has expired.[4]

**B.      Count II-Fraud.**

Fraud must be pled with particularity.[5]  Plaintiffs have failed to allege Count II of their Complaint with particularity.

To prove common law fraud, a plaintiff must establish nine elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speakers knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information 's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely

---

[1] *Turner v. Devlin*, 174 Ariz. 201, 848 P. 2d 286 (1993).
[2] *Unelko Corp. v. Rooney*, 912 F3d 1049 (9th Circ. 1990), *quoting  Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct.  2695, 111 L.ed. 2d 1 (1990); See *Koch v. Goldway*, 817 F. 2d 507 (9th Cir. 1987); *Vinson v. O'Malley*, 25 Ariz. 552, 220 P.393 (1923).
[3] *Green Acres Trust v. London*, 141 Ariz. 609, 688 P.2d 617 (1984); *Petroni v. Board of Regents*, 15 Ariz. 562, 566 P.2d 1038 (Ct. App. 1977).
[4] A.R.S. §12-541(1).
[5] Rule 9(b), Ariz.R.Civ.P.

12103-10/MCL/MCL/898105_v1

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

thereon, and (9) the hearer's consequent and proximate injury.[6] Plaintiffs cannot prove each of the nine elements of fraud.

**C.**    <u>Count III-Breach of Contract.</u>

In an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages.[7] Formation of a contract requires a meeting of the minds and the manifestation of consent and consideration.[8] None of these elements are present here. Neither Defendant promised to pay Plaintiffs purported salary from BioNovix, or reimburse Plaintiffs for credit card charges, nor did Defendants receive any consideration for doing so. Lack or failure of consideration is a defense to a claim for breach of contract.[9]

Plaintiffs' claims for breach of contract are also barred by the Statute of Frauds.[10] Here, Plaintiffs allege that Defendants are responsible for the purported debt(s) of BioNovix. Such promise must be memorialized in writing in accordance with the Statute of Frauds. No such writing exists, and Plaintiffs therefore do not have a valid cause of action for breach of contract.

**D.**    <u>False Arrest, False Imprisonment, Malicious Prosecution.</u>

The tort of false imprisonment is established by proving the following elements:

1. The defendant confined the plaintiff or caused the confinement;

2. The defendant intended the confinement;

3. The plaintiff was conscious of the confinement;

4. The plaintiff did not consent to the confinement; and

5. The confinement was without legal justification.[11]

[6] *Taeger v. Catholic Family and Community Services,* 196 Ariz. 285, 294 (Ariz. App. 1999); *See also Echols v. Beauty-Built Homes, Inc.* 132 Ariz. 498, 500 (1982).
[7] *Chartone, Inc. v. Bernini,* 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (App. 2004).
[8] *State Farm Mut. Auto. Ins. Co. v. Peaton,* 168 Ariz. 184, 193, 812 P.2d 1002, 1011 (1990) and Restatement Second of Contracts §17 (1981).
[9] *Willcox Clinic, Ltd. v. Evans Products Co.,* 136 Ariz. 400, 666 P.2d 500 (App. 1983).
[10] A.R.S. §44-101(2).
[11] *Am. Jur. Pleading and Practice Forms, False Imprisonment § 12.*

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

12103-10/MCL/MCL/898105_v1

This tort includes the tort of false arrest, which results when a person is confined by a person with the power to arrest.[12] A plaintiff making a false arrest claim must prove three elements: "an arrest under the process of law, without probable cause and made maliciously."

A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused.[13]

Plaintiffs have failed to state a claim for false arrest, false imprisonment, or malicious prosecution.

## 2.   Deadline for Completion of Discovery and all Additional Discovery to be Taken

(a)   Deadline for the completion of discovery: **March 30, 2012**

(b)   Deadline to issue written discovery: **November 30, 2011**

(c)   Deadline to respond to written discovery: **January 16, 2012**

(d)   Deadline for all non-expert and expert depositions: **March 30, 2012**

None of the discovery rules or the local rules of practice needs to be modified or suspended.

## 3.   Deadline for the Disclosure of Expert Witnesses

The parties propose that the deadline for the disclosure of all expert witnesses shall be: **November 8, 2011**.

## 4.   Deadline for the Disclosure of Rebuttal Witnesses

Plaintiff shall disclose rebuttal expert witnesses by: **December 15, 2011**.

---

[12] *Id.*

[13] *Restatement (Second) of Torts*, Chapter 29, § 653.

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

8

**5.** **Determine the Number of Expert Witnesses**

The parties shall be limited to two expert witnesses total for all issues in the lawsuit.

**6.** **Deadline for Disclosure of Non-Expert Witnesses**

Both parties shall disclose their non-expert witnesses by: **January 11, 2012**

**7.** **Pending Discovery Disputes**

Currently there are no discovery disputes.

**8.** **Non-Meritorious Claims or Defenses**

N/A.

**9.** **Deadline for Amendment of Pleadings**

The parties propose that any motions to amend the pleadings must be filed by: **December 19, 2011**.

**10.** **Facts Still at Issue**

All material facts are disputed.

**11.** **Evidence**

The parties will be better situated to stipulate to the foundation or admissibility of evidence at the close of discovery.

**12.** **Rule 38.1 Time Limits**

Rule 38.1 time limits should be waived in this case.

**13.** **Deadline for Disclosure Statements and Supplements**

The parties shall disclose up-to-date final Rule 26.1 Supplemental Disclosure Statements by: **April 25, 2012**.

**14.** **Settlement/Mediation**

The parties will complete a settlement conference or mediation by: **May 30, 2012**.

9

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

**15.** **Date for Filing Rule 16(d) Statement**

If no dispositive motions have been filed, the parties shall file the Rule 16(d) Joint Pretrial Statement by: **June 29, 2012**.

**16.** **Trial Date and Limitations**

If no dispositive motions have been filed, the parties propose a trial date during any week beginning on **July 23, 2012**. The parties contemplate that trial will take **2** trial days.

**17.** **Other Orders as the Court Deems Appropriate**

The parties agree to file dispositive motions, if any, by: **June 29, 2012**.

DATED this 27th day of June, 2011.

**JABURG & WILK, P.C.**

*/s/ Michelle C. Lombino*
Roger L. Cohen
Michelle C. Lombino
Victoria E. Ames
*Attorneys for Defendants*


*The Nathanson Law Firm*


*/s/ Philip J. Nathanson (w/permission)*
Philip J. Nathanson, Esq.
*Attorney for Plaintiffs*

**ORIGINAL E-FILED** and **COPY** of the foregoing mailed this 27th day of June, 2011 to:


Philip J. Nathanson, Esq.
**The Nathanson Law Firm**
8326 E. Hartford Drive, Suite 101
Scottsdale, Arizona 85255
*Attorney for Plaintiffs*

*Pamela S. Anderson*

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

10

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-051209                                    06/14/2011

                                        CLERK OF THE COURT
HONORABLE LINDA H. MILES                    L. Carlson
                                              Deputy


MARCUS LABERTEW, et al.                  PHILIP J NATHANSON

v.

FRED R AUZENNE, et al.                    MICHELLE C LOMBINO




MINUTE ENTRY


        Courtroom 106-NE

        8:28 a.m. This is the time set for telephonic Comprehensive Pretrial Conference set by
the Court by minute entry dated May 2, 2011. Counsel, Philip Nathanson, is present for
Plaintiffs. Counsel, Michelle Lombino and Roger Cohen, are present for Defendants.

        A record of the proceeding is made by audio and/or videotape in lieu of a court reporter.

        In the May 2, 2011 minute entry, the parties were ordered to present a Pretrial
Conference Memorandum to the Court 5 judicial days prior to the conference. Plaintiffs have not
submitted a Pretrial Conference Memorandum. Defendants submitted a Renewed Motion to
Dismiss for Failure of Prosecution.

        Matters are discussed.

        With respect to Defendants' Motion to Dismiss, the Motion is denied.

CV 2010-051209                                                    06/14/2011

IT IS ORDERED that Plaintiffs' counsel shall advise Plaintiffs in writing that the delays that have occurred in this case will not be tolerated in the future. If Plaintiffs or their counsel cause further delays, the Court will consider dismissal of the case as a sanction. Plaintiffs' counsel shall provide a copy of this notice to Defendants' counsel and the Court.

**IT IS FURTHER ORDERED resetting the telephonic Comprehensive Pretrial Conference to June 30, 2011, at 10:00 a.m.**

Plaintiffs' counsel shall initiate the call.

IT IS FURTHER ORDERED that Plaintiffs' counsel shall provide Defendants' counsel with an initial disclosure statement in writing by 5 p.m. on June 15, 2011.

IT IS FURTHER ORDERED that counsel shall provide a Pretrial Conference Memorandum and proposed Scheduling Order at least 5 judicial days prior to the conference.

8:49 a.m. Matter concludes.


ALERT: eFiling through AZTurboCourt.gov is mandatory in civil cases for attorney-filed documents effective May 1, 2011. See Arizona Supreme Court Administrative Orders 2010-117 and 2011-010. The Court may impose sanctions against counsel to ensure compliance with this requirement after May 1, 2011.

**ORIGINAL E-FILED** and **COPY** of the
foregoing mailed this 15th day of July,
2011 to:

Philip J. Nathanson, Esq.
The Nathanson Law Firm
8326 E. Hartford Drive, Suite 101
Scottsdale, Arizona 85255
Attorney for Plaintiffs


*/s/ Ana M. Canby*

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

13

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-051209                                     06/30/2011


                                          CLERK OF THE COURT
HONORABLE LINDA H. MILES                       L. Carlson
                                               Deputy



MARCUS LABERTEW, et al.                 PHILIP J NATHANSON

v.

FRED R AUZENNE, et al.                  MICHELLE C LOMBINO


                                        ALTERNATIVE DISPUTE
                                        RESOLUTION - CCC



MINUTE ENTRY


        Courtroom 106-NE

        10:03 a.m. This is the time set for telephonic comprehensive pretrial conference.
Counsel, Philip Nathanson, is present for Plaintiffs. Counsel, Michelle Lombino, is present for
Defendants.

        A record of the proceeding is made by audio and/or videotape in lieu of a court reporter.

        The Court has reviewed the parties' "Rule 16, Ariz.R.Civ.P. Joint Pretrial Conference
Memorandum" filed June 27, 2011, and accompanying proposed form of order.

        The Court understands that the parties agree on the deadlines reflected in their Joint
Pretrial Conference Memorandum, and proposed form of order.

        Discussion is held.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2010-051209                                          06/30/2011

IT IS ORDERED approving and settling the formal written Scheduling Order electronically signed by the Court on June 30, 2011 and e-Filed on June 30, 2011.

By agreement of the parties,

IT IS FURTHER ORDERED that the parties shall participate in a mandatory Settlement Conference. This case is referred to the court's Alternative Dispute Resolution Office for the appointment of a judge *pro tempore* to conduct a settlement conference. Counsel and/or parties will receive a minute entry from ADR appointing the judge *pro tempore*. Counsel and any "pro per" parties will contact the appointed judge *pro tempore* to arrange the date, time and location for the settlement conference. The judge *pro tempore* is requested to conduct a settlement conference not later than **May 30, 2012**. The Office of Alternative Dispute Resolution will not do the scheduling of the settlement conference so please do not contact that office.

IT IS FURTHER ORDERED:

1. No expert witnesses, expert opinions, lay witnesses, or exhibits shall be allowed at trial other than those disclosed in a timely manner, except for good cause shown or by written agreement of the parties.

2. A telephonic status conference is set for **June 5, 2012 at 8:30 a.m.** (time allotted: 15 minutes) for the purpose of assigning a trial date if the case has not settled.

   **NOTE:** Plaintiff shall be responsible for initiating the conference call by calling this Division at **602-506-6452**, with all participating parties and counsel on the line at the date and time specified above.

3. Should any discovery disputes arise, any party seeking a discovery order shall, prior to filing discovery motions, meet and confer pursuant to Ariz.R.Civ.P., Rule 37(a)(2)(C). Counsel are advised that, as the Court interprets Rule 37(a)(2)(C), an exchange of correspondence between counsel is **not** sufficient to satisfy the "personal consultation" requirement of the Rule, except in extraordinary circumstances. At a minimum, counsel must speak to each other by telephone to attempt to resolve the dispute in good faith before involving the Court. Counsel are further advised that after the personal consultation referenced above, the Court is available to discuss, by joint telephone call, discovery disputes or any other matter that may impact the parties' ability to resolve this case in a just, speedy and inexpensive manner. See Rule 1, Ariz.R.Civ.P.

CV 2010-051209                                              06/30/2011

4.  The dates set forth in the Scheduling Order are FIRM dates and will not be extended or modified by this Court absent good cause.  Lack of preparation will not ordinarily be considered good cause.

5.  This case is removed from the Inactive Calendar and all requirements of Rule 38.1, Ariz.R.Civ.P., are waived until otherwise ordered by the Court.

6.  In no less than **five days** prior to the Status Conference set herein, the parties shall submit a Joint Status Report to the Court containing a brief history of the case, the status of discovery, any outstanding discovery disputes, and the status of the parties' settlement efforts.

10:08 a.m. Matter concludes.

ALERT:  eFiling through AZTurboCourt.gov is mandatory in civil cases for attorney-filed documents effective May 1, 2011.  See Arizona Supreme Court Administrative Orders 2010-117 and 2011-010.  The Court may impose sanctions against counsel to ensure compliance with this requirement after May 1, 2011.

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Dorotha Stephens
Filing ID 924313
6/30/2011 10:13:58 AM

1  Philip J. Nathanson    Arizona State Bar #013624
   THE NATHANSON LAW FIRM
2  8326 E. Hartford Drive – Suite 101
3  Scottsdale, AZ  85255
   (480) 419-2578
4  (480) 419-4136
   philipj@nathansonlawfirm.com
5
6  *Attorney for Plaintiffs*

7              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                  IN AND FOR THE COUNTY OF MARICOPA

9
   MARCUS LABERTEW aka MARK          :
10 LABERTEW; JOHN MCDERMOTT aka        :   No. CV2010-051209
   JACK MCDERMOTT and JENNIFER       :
11 MCDERMOTT, husband and wife,      :
                                     :
12          Plaintiffs,              :   **SCHEDULING ORDER**
                                     :
13      v.                           :   (Assigned to the Hon. Linda Miles)
                                     :
14 FRED R. AUZENNE and               :
15 LORAL LANGEMEIER,                 :
                                     :
16                                   :
            Defendants.              :
17                                   :

18
19      The Court has reviewed the parties' Joint Pretrial Conference Memorandum.  Pursuant to
20 the parties' stipulation,

21      **IT IS ORDERED** as follows:

22      **1.**    Areas of expert testimony.

23          a.    Plaintiffs shall disclose areas of expert  testimony by  **5:00  p.m.  on
                  September 23, 2011.**
24          b.    Defendants shall disclose areas of expert testimony by  **5:00  p.m.  on
25                October 14, 2011.**

26

12103-10/MCL/MCL/897755_v2

2. Identity and opinions of expert witnesses.

   a. Plaintiffs shall disclose the identity and opinions of their expert witnesses by **5:00 p.m. on October 24, 2011.**

   b. Defendants shall disclose the identity and opinions of their expert witnesses by **5:00 p.m. on November 8, 2011.**

3. Any and all discovery requests (excluding notices of deposition) shall be served by **5:00 p.m. on November 30, 2011.**

   A party desiring to take the deposition of any person upon oral examination shall give notice in writing to every other party to the action at least 7 days prior to the date of the deposition. A copy of the notice of deposition shall be sent to opposing counsel via email or facsimile on the same day as such notice is given.

4. The parties shall disclose areas of non-expert testimony and the identity of each (fact) witness by **5:00 p.m. on January 11, 2012.**

5. The parties shall mutually and simultaneously disclose their rebuttal expert witnesses and opinions by **5:00 p.m. on December 15, 2011.**

6. The parties shall exchange up-to-date final Rule 26.1 Supplemental Disclosure Statements by **5:00 p.m. on April 25, 2012.** This Order does not replace the parties' obligation to seasonably disclose on an on-going basis under Rule 26.1 as information becomes available.

7. All discovery shall be concluded by **5:00 p.m. on March 30, 2012.**

8. The parties shall participate in a mandatory Settlement Conference and this matter is referred to the court's Alternative Dispute Resolution for the appointment of a judge *pro tempore* to conduct a settlement conference. <u>Counsel and any "pro per" parties will contact the appointed judge pro tempore to arrange the time and location for the settlement conference. The Judge *pro tempore* is requested to conduct a settlement conference not later than **May 30, 2012.** The Office of Alternative Dispute Resolution will not do the scheduling of the settlement conference so please do not contact that office.</u> If counsel prefer to use a private mediator to conduct the Settlement Conference, a Stipulation and Order re Alternative to ADR must be presented to the Court by **5:00 p.m. on April 6, 2012.**

9. No expert witnesses, expert opinions, lay witnesses, or exhibits shall be used at trial other than those disclosed in a timely manner, except for good cause shown or written agreement of the parties.

10. All pretrial motions, other than motions *in limine*, must be filed by **5:00 p.m. on June 22, 2012.**

2

1

**11.** A **Telephonic Pretrial Status/Scheduling Conference** is set for **June 5, 2012, at
2      8:30.m.** for the purpose of assigning a trial date if the case has not settled.
3      Counsel shall have their trial calendars available. Counsel for Plaintiff shall
       initiate the telephonic conference by first arranging the presence of all other
4      counsel on the conference call and by calling this division at **(602) 506-6452**
       promptly at the scheduled time.

5   **12.** Should any discovery disputes arise, counsel, prior to filing discovery motions,
6      shall meet and confer pursuant to Rule 37, ARCP.

7   **13.** The dates set forth in this Order are FIRM dates and will not be extended or
       modified by this Court absent good cause. Lack of preparation will not ordinarily
8      be considered good cause.

9   **14.** This case is removed from the Inactive Calendar and all requirements of Rule
       38.1, ARCP, are waived unless and until otherwise ordered by the Court.

10  DATED: June 30, 2011

11                          MARICOPA COUNTY SUPERIOR COURT

12

13

14                          _____

15                          Hon. Linda H. Miles

16

17

18

19

20

21

22

23

24

25

26

12103-10/MCL/MCL/897755_v2

eSignature Page -- 201106301110011_Labertew_scheduling_order
                    r.pdf

Granted

Signed on this day, June 30, 2011



/S/ Linda  Miles
Judicial Officer of Superior Court

1  Roger L. Cohen (004409)
   Michelle C. Lombino (016252)
2  Victoria E. Ames (027163)
   **JABURG & WILK, P.C.**
3  3200 N. Central Avenue, Suite 2000
   Phoenix, Arizona 85012
4  rlc@jaburgwilk.com
   mcl@jaburgwilk.com
5  (602) 248-1000

6

7  *Attorneys for Defendants Fred R. Auzenne and Loral Langemeier*

8

9                    **SUPERIOR COURT OF ARIZONA**

10                       **MARICOPA COUNTY**

11
   MARCUS LABERTEW aka MARK            Case No. CV2010-051209
12 LABERTEW and JANE DOE
   LABERTEW, husband and wife; JOHN
13 MCDERMOTT aka JACK MCDERMOTT
   and JENNIFER MCDERMOTT, husband
14 and wife                            **RULE 16, ARIZ.R.CIV.P., JOINT
                Plaintiff,             PRETRIAL CONFERENCE
15                                     MEMORANDUM**

16 v.
                                       (Assigned to Hon. Linda Miles)
17 FRED R. AUZENNE and
   LORAL LANGEMEIER,
18
                Defendants.
19

20      The parties to this litigation (the "Parties") hereby submit their Joint Rule 16

21 Pretrial Conference Memorandum pursuant to the Court's Minute Entry dated May 5,

22 2011.

23 **1.    The nature of the case, the issues and each party's position with respect to the**

24 **issues:**

25 **Plaintiffs' Position:**

26      BioNovix, Inc ("BioNovix") was engaged in the business of distribution and sales

27 of health products. Prior to March 22, 2009, sales of BioNovix's products were

28

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

accomplished through a multi-level network of Independent Business Consultants

("IBCs") and subsidiary corporations including without limitation a Korean entity known

as BioNovix Korea.

In or prior to February 2008, communications occurred between Mark Labertew,

("Labertew") and BioNovix regarding Labertew's becoming a management

employee of BioNovix. On February 16, 2008 at the Director's meeting, BioNovix hired

Labertew as its CEO and CFO and was given full control over BioNovix (domestic and

international). On February 18, 2008 started his position.

On February 25, 2008 Fred Auzenne, ("Auzenne") submitted his letter of

resignation as President of International Development and any other position at BioNovix,

Inc. In his letter of resignation, Auzenne states that one of his reasons for leaving is the

fact that they hired Labertew and that it was a mistake. He states that no one in the

company, except for accounting, will believe him a leader for a network marketing

organization.

Auzenne continued on as Director until December 15, 2008. Auzenne and the

other Directors of the company had differences in opinions. The parties decided that it

was in their mutual interests to have Auzenne resign as Director of the company.

Defendant Loral Langemeier ("Langemeier") was also a Director for Bionovix.

Labertew continued in his position as set forth above until March 10, 2009, at

which time he was terminated.

Jack McDermott, ("McDermott") during relevant periods, was employed by

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1  and McDermott for conversion, diversion of corporate assets and misappropriation of

2  trade secrets; Labertew and McDermott responded by filing an Answer and Counterclaim

3  asserting claims essentially identical to those asserted in this case.  That lawsuit was

4  dismissed by minute order filed March 24, 2010, following the bankruptcy filing of

5  BioNovix.  Nearly a year after suing BioNovix, Labertew and McDermott brought the

6  present lawsuit against Defendants Fred R. Auzenne and Loral Langemeier, seeking to

7  convert their claims against the company into personal claims against the purported

8  members of BioNovix's board of directors.

9       Unfortunately for Plaintiffs, there is no factual basis for any of the claims against

10  Defendants.  As to the first three Counts of the Complaint, each is marked by at least one

11  fatal legal flaw, the effect of which is to mandate dismissal.  Count Four is created out of

12  whole cloth; McDermott's own factual statement demonstrates that his arrest in Korea had

13  no connection to Defendants, thereby again mandating dismissal.

14  **II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

15       The following evidence comes directly from the Complaint and is, for purposes of

16  the present Motion only, undisputed:

17       BioNovix was engaged in the business of distribution and sales of health products.

18  Prior to March 22, 2009, sales of products were accomplished through a multi-level

19  network of independent business consultants and subsidiary corporations including

20  without limitation a Korean entity known as BioNovix Korea. (Complaint, first ¶ 6).[1]

21       Defendants Fred Auzenne ("Auzenne") and Loral Langemeier ("Langemeier")

22  were officers and directors of BioNovix.[2]  (*Id.*, first ¶ 2).

23       In February 2008, BioNovix hired Labertew as its CEO and CFO.  (*Id.*, first ¶ 7).

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

---

[1] Paragraphs of the Complaint are confusing and mixed up.  The first set of Paragraphs 1 – 20 include "parties and jurisdiction," "general allegations," and "Count 1."  But Count II has an additional Paragraph 20, plus a Paragraph 21, and then starts again with Paragraphs 4 – 8.  Count III starts over completely, using Paragraphs 1 – 6; and Count IV starts over again, with Paragraphs 1 – 5.

[2] Again, the allegations of the Complaint are admitted only for purposes of the present motion, but are not otherwise admitted.

3

Labertew continued in his positions as CEO and CFO until March 10, 2009, at which time the Board terminated him from all positions as an officer and employee of BioNovix. (Complaint, first ¶ 8).

McDermott was also employed by BioNovix. (*Id.*, ¶ 9).

Both McDermott and Labertew were terminated by BioNovix. (*Id.*, first ¶¶ 8, 10). The Complaint correctly states that Labertew was terminated on March 10, 2009, but for some reason is coy as to the date of McDermott's termination. (*Id.*).

The following additional evidence is undisputed:

As of February 18, 2008, the BioNovix Board of Directors gave Labertew full control over BioNovix, with Auzenne to resign as an officer/employee and to stay on as a director/advisor only. (Statement of Facts ("SOF"), Ex. 1).

On February 18, 2008, Auzenne resigned as an officer of BioNovix and BioNovix released him from all claims including without limitation, any claim arising out of (a) any actual alleged act or omission by Auzenne in his capacity (or claimed capacity) as an officer, director, employee or agent of BioNovix, and (b) any dealings between Auzenne and BioNovix, or any third party on BioNovix's behalf. (SOF, Ex. 2). Labertew signed this release as President of BioNovix. (*Id.*, p. 5).

By letter dated March 10, 2009, BioNovix, through counsel, terminated Labertew and McDermott as officers and employees, and demanded that they immediately return all company property including company funds, an Infiniti FX 35, equipment, records, marketing plans, customer lists and leads, customer purchase history, inventory lists, supplier and vendor lists, technical data and computer programs. (SOF, Ex. 3).

On April 14, 2009, BioNovix filed a complaint against Labertew and McDermott, and their wives, and Suzy Park, Maricopa County Superior Court Case No. CV2009-011617 (the "BioNovix Litigation"), alleging claims for: (1) breach of fiduciary duty, (2) conversion, (3) misappropriation of trade secrets, (4) unjust enrichment, and (5) computer tampering. In its Complaint, BioNovix alleged that during the period of their employment by BioNovix, Labertew and McDermott, acting in concert and on one another's behalf,

4

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1  intentionally undertook to, and did, engage in a consistent course of conduct detrimental
2  to the rights and interests of BioNovix, including without limitation (a) misappropriating
3  and diverting for their own personal benefit funds and other tangible and intangible assets
4  of BioNovix and otherwise engaging in self-dealing, (b) destroying tangible and
5  intangible property of BioNovix, and (c) denying BioNovix access to its own computer
6  data and other tangible and intangible property. (See Court Record).

7      In the BioNovix Litigation, Labertew and McDermott filed an Answer and
8  Counterclaim, asserting claims against BioNovix for Defamation (Count I), Fraud (Count
9  II), and Breach of Contract and Unpaid Wage Claim (Count III). (*Id.*).

10     On December 29, 2009, BioNovix filed a petition for relief under Chapter 7 of the
11 Bankruptcy Code in the Bankruptcy Court for the District of Utah, under Case No.: 09-
12 34374, and the Arizona Superior Court subsequently dismissed the BioNovix Litigation
13 without prejudice. (*Id.*).

14     The present Complaint was filed on March 11, 2010, alleging claims by Labertew
15 and McDermott against Auzenne and Langemeier for (1) Defamation (Count I); (2) Fraud
16 (Count II); Breach of Contract and Unpaid Wage Claim (Count III); and (4) False Arrest,
17 False Imprisonment and Malicious Prosecution (Count IV). Except for the false
18 imprisonment story in Count IV, the present Complaint is exactly the same as the
19 Counterclaim against BioNovix.

20 **III.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A
       MATTER OF LAW.**
21
22     Rule 56 provides that the moving party is entitled to summary judgment where no
   genuine issues of material fact exist and the moving party is entitled to a judgment as a
23
   matter of law.  The summary judgment standard continues to be governed by *Orme*
24
   *School v. Reeves*, in which the Supreme Court explained that the trial judge should grant
25
   summary judgment where:
26
27         . . . in ruling on the motion for summary judgment, the trial
           judge would not have been required to pass on the credibility
28         of witnesses with differing versions of material facts, would
           not have been required to weigh the quality of documentary or

5

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

other evidence, and was not required to choose among competing or conflicting inferences.

166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990).

A. The One-Year Statute Of Limitations For Defamation Has Expired; Therefore Count One Fails As A Matter Of Law.

As a threshold matter, there is no factual basis for the defamation claim and in the event this matter proceeds, Defendants intend to vigorously dispute the efficacy of Count One. Among other things, the statements alleged to have been made about Plaintiffs as set forth in Paragraph 13 of the Complaint are true, and therefore are not actionable. *Turner v. Devlin*, 174 Ariz. 201, 848 P. 2d 286 (1993). In addition, the statement in Paragraph 13 (c), that Plaintiffs "acted in a disloyal and unprofessional manner toward BioNovix" is a statement of opinion and is not actionable. *See MacConnell v. Mitten*, 131 Ariz. 22, 25, 638 P.2d 689, 692 (1981), citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974); Restatement (Second) of Torts, § 566 and Comments.

In any event, Plaintiffs allege that the statements were made during their employment, and it is undisputed that (1) Plaintiffs' employment was terminated on March 10, 2009, and (2) the Complaint was filed on March 11, 2010.

The statute of limitations for defamation is one year. A.R.S. § 12-541; *Glaze v. Marcus*, 151 Ariz. 538, 729 P.2d 342(App.1986). The Arizona Supreme Court makes clear that even one day late is sufficient as a bar under the applicable statute of limitations. *Smith v. Payne*, 156 Ariz. 506, 512, 753 P.2d 1162, 1168 (1988). Given that the Complaint was filed more than one year after any alleged defamatory statements were made, the claim for defamation is barred as a matter of law.

B. Plaintiffs Fail to Plead Fraud With Particularity and Omit Two Required Elements; Therefore Count II Fails as a Matter of Law.

Fraud must be pled with particularity. Rule 9(b), Ariz.R.Civ.P.

To prove common law fraud, a plaintiff must establish nine elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speakers knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. *Taeger v. Catholic Family and Community Services,* 196 Ariz. 285, 294, 995 P.2d 721, 730 (App. 1999); See also *Echols v. Beauty-Built Homes, Inc.* 132 Ariz. 498, 500 (1982).

Under the comparable federal rule, the Ninth Circuit Court of Appeals has recently confirmed that Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz,* 616 F.3d 993, 998 (9th Cir. 2010).

Plaintiffs have failed to comply with Rule 9(b), in that they have not stated with particularity the circumstances constituting the alleged fraud. In Count II, Paragraph 21 of the Complaint, Plaintiffs claim that Defendants made certain statements to induce them to become employed by BioNovix. Defendants vigorously deny that they personally employed either Labertew or McDermott or that they induced Labertew or McDermott to become employees of BioNovix. (See Auzenne Declaration, SOF, Ex. 4). In any event, on the face of the Complaint, there is an absence of the required "who, what, when, where, and how" of the purported misstatements. If Defendants did make such statements, did they speak in tandem? When were such statements made? In what location? Who was present? What were the circumstances? Was it orally or in writing? Was it in person or on the phone? Because the Complaint fails to set forth with particularity these required factors, Count II cannot survive summary dismissal.

More specifically, Plaintiffs fail even to allege two of the nine required elements of a fraud claim. There is no allegation of either (1) Plaintiffs' ignorance of the falsity of the purported statements, or (2) Plaintiffs' right to rely on the purported statements.

Absent even the barest allegations of these required elements, coupled with the failure to state with requisite specificity the other elements, Count II fails to pass scrutiny and is properly dismissed for failure to state a claim. See *Neubronner v. Milken,* 6 F.3d

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

12103-1/KMS/RLC/899800_v2

1    666, 672 (9th Cir. 1993) (dismissal appropriate for failure to allege required elements

2    under Rule 9(b)).[3]

3        C.  There Is No Allegation of a Contract, No Allegation That Defendants
         Guaranteed The Purported Debts, And Nothing In Writing That Would Comply
4        With The Statute Of Frauds; Therefore, Count III Fails As A Matter Of Law.

5        As Plaintiffs themselves allege, both Labertew and McDermott were "employed by

6    BioNovix" and "BioNovix hired Labertew." (See Complaint, first ¶¶ 7, 9). As Plaintiffs

7    further allege, and as admitted for purposes of the present Motion, Defendants "were

8    officers and directors of a corporation named BioNovix." (*Id.*, first ¶ 2). There is no

9    allegation of any contract between Plaintiffs and Defendants, and no allegation as to why

10   Defendants, as purported officers and directors of BioNovix, might be liable for Plaintiffs'

11   salary or for corporate obligations.

12       In an action based on breach of contract, the plaintiff has the burden of proving the

13   existence of a contract, breach of the contract, and resulting damages. *Chartone, Inc. v.*

14   *Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (App. 2004). Formation of a contract

15   requires a meeting of the minds and the manifestation of consent and consideration. *State*

16   *Farm Mut. Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 193, 812 P.2d 1002, 1011 (1990);

17   Restatement Second of Contracts §17 (1981). Lack or failure of consideration is a

18   defense to a claim for breach of contract. *Willcox Clinic, Ltd. v. Evans Products Co.*, 136

19   Ariz. 400, 666 P.2d 500 (App. 1983).

20       None of the required elements are present or alleged in the Complaint. Count III

21   alleges that Plaintiffs were owed salary and unreimbursed credit card charges "incurred

22   for the benefit of the business." (Complaint, Count III, ¶¶ 3, 4, 5).[4] While the Complaint

23   alleges that "Defendants repeatedly promised to pay these amounts," there is no basic

24   allegation of a contract between Plaintiffs and Defendants, and no allegation of any

25   _____

26   [3] In *Milken*, the plaintiff failed despite repeated opportunities to cure deficiencies in his Complaint. Plaintiffs in this
     case may argue that they should be permitted to amend their Complaint to cure the deficiencies. However, in this
     case Plaintiffs have failed to prosecute and, despite repeated opportunities to pursue the litigation, have failed to do
27   so. By minute entry filed June 20, 2011, this Court denied Defendants' Renewed Motion to Dismiss for Failure to
     State a Claim, but ordered that Plaintiffs' counsel advise Plaintiffs "that the delays that have occurred in this case will
28   not be tolerated in the future."
     [4] Paragraphs 3 and 4 in Count III are exactly the same.

8

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

consideration that Defendants would have received in exchange for such a promise. (See Count III, generally).

Nor would Auzenne or Langemeier, simply by virtue of their status as directors or officers, or former directors or officers, be liable for BioNovix's debts. *Loiselle v. Cosas Management Group, LLC*, 224 Ariz. 207, 214, 228 P.3d 943, 950 (App. 2010) (the personal assets of a corporate officer may not normally be reached to satisfy corporate liabilities); *Ferrarell v. Robinson*, 11 Ariz.App. 473, 475, 465 P.2d 610, 612 (App.1970) (officers and directors are not liable for corporate contracts unless they have bound themselves individually).

The mere allegation that "Defendants repeatedly promised to pay" is insufficient to suggest that Auzenne or Langemeier bound themselves individually to pay the corporate debts. Arizona law specifically requires that any guaranty of indebtedness be in writing:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:
>
> 2. To charge a person upon a promise to answer for the debt, default or miscarriage of another.

A.R.S. § 44-101(2); See *Blakeway v. Texas Bus. Investments Co.,* 12 Ariz. App. 390, 470 P.2d 710 (App. 1970) (Where complaint alleged that defendant assumed and agreed in writing to pay maker's obligation in case of default, but defendant had not signed note as guarantor and evidence was as to oral representations purportedly made by defendant, statute of frauds defense was applicable to bar recovery on theory initially espoused in complaint).

The effect of this provision of the Statute of Frauds is to require that an agreement to be responsible for the debt of another party must be in writing to be enforceable. See *Romney Produce Co. v. Edwards*, 9 Ariz. App. 258, 451 P.2d 338 (App. 1969). While an exception exists for transactions in which the "leading object" of the alleged guarantor is to protect his own interest and not to become a guarantor, *Graham v. Vegetable Oil*

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

9

*Products Co.*, 1 Ariz. App. 237, 242, 401 P.2d 242, 247 (App. 1965), the burden of proving that exception is a "difficult one," *Romney*, 9 Ariz. App. at 261, 451 P.2d at 341. It has expressly been held, moreover, that a

> showing of a substantial interest on the part of the promisor, without more, sheds no light upon the intention of the parties at the time the alleged promise was made.

*Graham*, 1 Ariz. App. at 242, 401 P.2d at 247.

In any event, where a statute of frauds defense is raised, the burden of proof is on the party opposing the defense. *Graham*, 1 Ariz. App. at 242, 401 P.2d at 247, citing *Brown v. Beck*, 68 Ariz. 139, 145, 202 P.2d 528 (1949); *McClave v. Electric Supply, Inc.*, 93 Ariz. 135, 141, 379 P.2d 123 (1963).

Applying these principles to the present case, the outcome is clear. Plaintiffs make the bald allegation that Defendants promised to pay, but make no suggestion that the promise was in writing and, more than a year after filing the Complaint have failed to come forward with any evidence of a written guaranty. Because no such writing exists, and because there is no allegation and no evidence of such a writing, Plaintiffs have no valid claim that Defendants are liable for the debts of BioNovix.

D. There is no Evidence That Defendants Confined McDermott or Caused his Arrest or Confinement in Korea; Therefore Count IV Fails as a Matter of Law.

The claim for "false imprisonment" is simply a fantasy, created out of whole cloth and with no connection to Defendants. It apparently arises out of McDermott's adventure in Korea, which ended in a fistfight with a Korean woman and landed him in jail. McDermott himself described the incident in excruciating detail in a self-serving "interview" he and Labertew created, apparently for purposes of this litigation, and attached to their Rule 26.1 Disclosure Statement. (SOF, Ex. 5). McDermott explains the night of debauchery in 13 pages of transcript, but never mentions the presence of either Auzenne or Langemeier. He explains that just before he was scheduled to leave Korea, he got his guitar and personal possessions, went back to his hotel and came across a mob of 50 distributors and told them to "figure out what you want to drink." According to

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

10

McDermott's account, a woman "went a little crazy" and "grabbed my shirt and she started shaking me and tearing my clothes and yelling at me that she wants her money back and that I'm a thief." (*Id.*). McDermott describes his arrest for vandalism, and his night in a Korean jail. He describes the 19 hours before his lawyers appeared, where he had no food or water and was chained to a wall. (*Id.*). Later, his friend Suzy Park advised him he was arrested for felony assault" because "I had Jay Shin telling them that, yes, I hit this woman. . . so obviously, I was pretty agitated and irritated." (*Id.*) McDermott describes what must have been a frustrating, even scary experience, as a foreigner, without speaking the language and without a lawyer or an interpreter. (*Id.*). As Labertew noted, at the end of the tale: "good story." (*Id.*). But there is nothing in the story, no matter how interesting, that would provide a predicate to a claim for false imprisonment by Defendants. The only mention of either Defendant is where McDermott said that someone named "Cory" said he was "made aware of some emails.... between Loral [Langemeier] and [others in Korea]." (*Id.*). But of course, the company had business in Korea, and there was nothing mentioned in the story that would even begin to tie the emails to McDermott's arrest. There is nothing, even in McDermott's own version and own self-serving statement, to connect his imprisonment in Korea with Defendants.

Auzenne and Langemeier unequivocally deny that they were in Korea at the time of McDermott's arrest, that they had anything to do with his arrest, or that they even would have had the means to have him arrested in Korea. (SOF, Ex. 4).

The tort of false imprisonment is established by proving the following elements:

1. The defendant confined the plaintiff or caused the confinement;

2. The defendant intended the confinement;

3. The plaintiff was conscious of the confinement;

4. The plaintiff did not consent to the confinement; and

5. The confinement was without legal justification.

Am. Jur. Pleading and Practice Forms, False Imprisonment § 12. This tort includes the tort of false arrest, which results when a person is confined by a person with the power to

11

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1    arrest. *Id.* A plaintiff making a false arrest claim must prove three elements: "an arrest
2    under the process of law, without probable cause and made maliciously."

3        A private person who initiates or procures the institution of criminal proceedings
4    against another who is not guilty of the offense charged is subject to liability for malicious
5    prosecution if (a) he initiates or procures the proceedings without probable cause and
6    primarily for a purpose other than that of bringing an offender to justice, and (b) the
7    proceedings have terminated in favor of the accused. Restatement (Second) of Torts,
8    Chapter 29, § 653.

9        Based upon Plaintiffs' own evidence, including the testimony attached to their
10   Disclosure Statement, there is no evidence sufficient to state a claim for false arrest, false
11   imprisonment, or malicious prosecution. Accordingly, this claim must be dismissed as a
12   matter of law.

13   **IV.    CONCLUSION**

14       For the reasons set forth above, it is requested that the Court grant summary
15   judgment in favor of Defendants and dismiss the Complaint in its entirety. Because Count
16   III purports to arise out of contract, it is requested that this Court award Defendants their
17   attorney fees pursuant to A.R.S. § 12-341.01. See *Berthot v. Security Pac. Bank*, 170 Ariz.
18   318, 324, 823 P.2d 1326, 1332 (App.1991) (when a plaintiff alleges a breach of contract
19   claim, and a defendant is forced to defend against the claim and demonstrate that the
20   plaintiff is not entitled to recover on the contract on which the action is based, or that the
21   contract on which the action is based does not exist, the defendant is entitled to an award
22   of statutory fees pursuant to A.R.S. § 12-341.01). Defendants further request an award of
23   their attorney fees pursuant to A.R.S. § 12-349.

24       DATED this 15th day of July, 2011.

25                                                **JABURG & WILK, P.C.**

26

27                                                */s/ Roger L. Cohen*
                                                 Roger L. Cohen
28                                               Kathi Mann Sandweiss
                                                 Attorneys for Defendants

                                                 12

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

12103-1/KMS/RLC/899800_v2

1   depositions they claim are essential to prove their case. Certainly, no one has prevented

2   Plaintiffs from interviewing witnesses.

3      Labertew claims that Colleen gave him information directly (Labertew Declaration,

4   ¶10); and McDermott likewise claims that he has "spoken with Cory [Carter] personally

5   on several occasions." (McDermott Declaration, ¶ 9). Assuming the truth of these

6   assertions, Plaintiffs' motion is even more inexplicable, as nothing prevented Plaintiffs

7   from obtaining testimony from these witnesses in opposition to the Motion for Summary

8   Judgment, or from scheduling depositions of witnesses they claim to control. If they

9   wanted these witnesses' testimony, they could have simply submitted their Declarations to

10   controvert the Motion for Summary Judgment. That Plaintiffs have not yet taken the

11   depositions of any of the witnesses they claim are essential are red herrings, and fail to

12   support their argument that they need more time for discovery.

13      Plaintiffs and their counsel made the decision to file this lawsuit; if, as now

14   appears, they have no evidence to support their claims, one must question whether they

15   satisfied their Rule 11 obligations to properly investigate their own case before it was

16   filed. In any event, the absence of controverting materials, at this stage of the litigation,

17   provides clear indication that Plaintiffs were dilatory in prosecuting their claims. This

18   Court should not reward them by granting a further delay.

19      **C.**     **The Affidavits Fail to Set Forth With Specificity the Evidence Plaintiffs Seek to Obtain in Additional Discovery or How Such Evidence Would**

20            **Controvert Summary Judgment.**

21      The moving party under Rule 56(f) must present an affidavit advising the court of

22   the particular evidence beyond the party's control, the location of the evidence, what the

23   party believes the evidence will reveal, the methods to be used to obtain the evidence and

24   an estimate of the amount of time the additional discovery will require. *Lewis,* 178 Ariz.

25   330, 873 P.2d 668.

26      In their Declarations, Plaintiffs explain why each witness is purportedly "essential"

27   to their case. But nothing in either of the Declarations or the Motion rises to the *Lewis*

28   standard, and so the Declarations are clearly insufficient to justify relief under Rule 56(f).

8

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Defendants have moved for summary judgment on the grounds that (1) the one year statute of limitations for defamation expired pursuant to A.R.S. § 12-541; (2) Plaintiffs fail to allege two of the nine required elements of fraud – ignorance of the information's falsity and right to rely; (3) there is no allegation in the Complaint and nothing in the record to suggest that Defendants guaranteed the purported debts and nothing in writing that would comply with the Statute of Frauds, A.R.S. § 44-101(2); and (4) the "factual statement" attached to Plaintiffs' Disclosure Statement makes no mention of any wrongdoing by Defendants that would meet the elements of a claim for false arrest, false imprisonment, or malicious prosecution. While Plaintiffs set forth who they want to depose, and to some extent what information they believe each witness possesses, they make no effort to explain how the evidence will help them controvert the foregoing grounds for Summary Judgment.

That Fred Auzenne might have had an "active hand" in what Plaintiffs describe as the "mismanagement of BioNovix" or that Loral Langemeier's "involvement as a director" provides her "information about every single count in the complaint," is insufficient to demonstrate that they have specific, material evidence that might controvert Defendants' prima facie case. (*See* Labertew Declaration).

With respect to Plaintiffs' claim for defamation, McDermott, rather than submitting a Declaration in opposition to the Motion for Summary Judgment, instead submits a Declaration in which he claims that he needs more time to obtain a purported recording of a conference call he heard in which Langemeier purportedly blamed him and Labertew for BioNovix's problems, and that this is "direct evidence" of defamatory statements published after termination, and within the one year statute of limitations. Since he purportedly was a party to this call, McDermott ostensibly can attest to the date, time, and location of Langemeier's purported statements rather than suggest that he cannot respond to the Motion for Summary Judgment until he obtains a recording of the call.

As to their fraud claim, Plaintiffs failed to plead fraud with particularity as required by Rule 9(b), Ariz.R.Civ.P. While claiming that Defendants made certain statements to

9

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

induce them to become employed by BioNovix, Plaintiffs fail to identify the "who, what, when, where, and how" of the purported misstatements. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). There is nothing in either Declaration that would explain which contemplated deponent, if any, would state (a) which of the Defendants made the purported statements, (b) when such statements made, (c) in what location such statements were made, (d) who was present when such statements were made, (d) what the circumstances were of such statements, (e) whether such statements were made orally or in writing, in person or on the phone.

Nor, with respect to the purported statements Defendants made to "induce them" to become employed by BioNovix, do Plaintiffs explain which contemplated deponents, if any, might add to the two missing elements of a fraud claim; there is no allegation in the Complaint of either (1) Plaintiffs' ignorance of the falsity of the purported statements, or (2) Plaintiffs' right to rely on the purported statements, and nothing in the Declarations to suggest that any of the contemplated deponents might be able to supply that information.

Similarly, there is nothing in the Declarations to show that any of the contemplated deponents might set forth the proper elements of the breach of contract claim, *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (App. 2004) (plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages) or put forth a written document of guaranty sufficient to show that either Defendant had personally guaranteed the debts of BioNovix as required by A.R.S. § 44-101(2). No such testimony exists, and Plaintiffs do not suggest that they can ever obtain any such testimony.

The only evidence that McDermott proposes to "discover" with respect to his claim of false arrest and imprisonment is Langemeier's own testimony that she somehow "caused" him to be arrested. (McDermott Declaration, ¶ 8). Labertew claims that Colleen Sullivan told him that Langemeier told her she would have Plaintiffs "put in jail in Korea." (Labertew Declaration, ¶ 10). Yet there is nothing in either Declaration to explain why Langemeier would testify in that manner, when Auzenne and Langemeier

10

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

1  unequivocally deny that they were in Korea at the time of McDermott's arrest, or to show

2  that Auzenne and Langemeier had anything to do with McDermott's arrest, or that

3  Auzenne and Langemeier had the ability to cause McDermott's arrest in Korea. (SOF,

4  Ex. 4). Nor is there anything in either Declaration to explain why Plaintiffs could not

5  simply obtain the Declaration of Sullivan, or how, even if they did obtain such testimony,

6  it would meet the elements of a claim for false imprisonment. *See* Am. Jur. Pleading and

7  Practice Forms, False Imprisonment § 12 (false imprisonment is established by proving

8  (1) the defendant confined the plaintiff or caused the confinement; (2) the defendant

9  intended the confinement; (3) the plaintiff was conscious of the confinement; (4) the

10  plaintiff did not consent to the confinement; and (5) the confinement was without legal

11  justification.) Even if Sullivan testified that Langemeier told her she would have

12  Plaintiffs arrested, the testimony would not begin to meet the foregoing elements of a

13  cause of action.

14  Plaintiffs failed to show particular evidence beyond their control, the location of

15  the evidence, what they believe the evidence will reveal, the methods to be used to obtain

16  the evidence and how such evidence would controvert Defendants' prima facie case.

17  *Lewis,* 178 Ariz. 330, 873 P.2d 668. Plaintiffs are not, therefore, entitled to Rule 56(f)

18  relief.

19  **IV.  CONCLUSION**

20  For the reasons set forth above, Defendants request that the Court deny Plaintiffs'

21  request for a stay of summary judgment proceedings and further deny the request for an

22  extension under Rule 56(f). Given that Plaintiffs have failed to respond to the Motion,

23  Defendants further request that the Court grant summary judgment in favor of Defendants,

24  as requested under separate cover.

25  Defendants further request an award of their attorney fees pursuant to Rule 11,

26  Ariz.R.Civ.P., and A.R.S. § 12-349.

27

28

11

12103-10/KMS/MCL/917773_v5

DATED this 23rd day of August, 2011.

JABURG & WILK, P.C.

/s/ Roger L. Cohen
Roger L. Cohen
Michelle C. Lombino
Kathi Mann Sandweiss
Attorneys for Defendants

**ORIGINAL E-FILED** and **COPY** of the foregoing mailed this 23rd day of August, 2011 to:

Philip J. Nathanson, Esq.
The Nathanson Law Firm
8326 E. Hartford Drive, Suite 101
Scottsdale, Arizona 85255
Attorney for Plaintiffs

/s/ Ana M. Canby

Jaburg & Wilk, P.C.
Attorneys At Law
3200 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

12

12103-10/KMS/MCL/917773_v5