**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcus Labertew; and John McDermott and Jennifer McDermott, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Chartis Property Casualty Company, also known as AIG Casualty Company, and 21st Century North America Insurance Company, formerly known as American International Insurance Company,<br><br>Defendants. | No. CV-13-1785-PHX-DGC<br><br>**ORDER** |

This case involves an insurance coverage dispute and a claim of bad faith against Defendants. Plaintiffs seek production of certain claim file documents that Defendants have partially redacted on work product and attorney-client privilege grounds. The Court held a discovery conference with the parties on March 26, 2018, and directed them to file memoranda addressing the work product and privilege issues. Doc. 74. Having reviewed the memoranda and relevant case law, the Court finds that Defendants have not established work product protection but have not waived the attorney-client privilege.

**I.    Background.**

In March 2010, Plaintiffs filed a complaint in state court against Loral Langemeier asserting claims for breach of contract, defamation, fraud, and other wrongs arising out of

their relationship in Bio-Novix, a health products business venture. Doc. 1-1 at 2-10. Langermeier had insurance policies with Defendants and tendered defense of the suit to them before trial in January 2013. One month later, Defendants issued a position letter stating that there was no coverage for the claims asserted in the lawsuit. Doc. 76-3.

On the third day of trial, the parties entered into a stipulated judgment against Langemeier in the amount of $1.5 million. Doc. 1-16 at 27-28. The judgment was part of what is commonly called a "*Damron* agreement" under Arizona law, and included an assignment of Langemeier's claims against Defendants to Plaintiffs. *See Damron v. Sledge*, 460 P.2d 997 (Ariz. 1969).

Plaintiffs chose to collect their judgment through a garnishment action initiated in state court. Defendants removed the proceeding to this Court and filed answers to the writs of garnishment, denying that they owed funds to Plaintiffs. Docs. 6, 7. Plaintiffs thereafter filed an amended complaint alleging that Defendants owe Plaintiffs the $1.5 million stipulated judgment and are liable to Plaintiffs under *Damron* for alleged bad faith conduct. Doc. 42.

Plaintiffs sought production of the underlying claim file, including all documents related to the processing, investigation, and denial of the claim. Doc. 79-3 at 3. Defendants produced the claim file but redacted portions of ten pages on work product and attorney-client privilege grounds. *Id.* at 4; Doc. 76 at 2. The redacted material largely involves communications between the claims adjuster, Elisa Wheeler, two of her superiors, Mike Mansour and Brian Applebee, and outside counsel, Steven Mesaros and Randy Kingery. The redactions are as follows (listed in Bates number order):

    1-2.    2/19-20/13 emails between Wheeler and Kingery (00081)

    3-4.    1/29 and 1/31/13 emails between Wheeler and Mesaros (00082, 00082-3)

    5.    2/4/13 email from Wheeler to Mansour (00116)

    6-7.    2/7 and 2/12/13 emails between Mansour and Applebee (00122)

    8.    1/28/13 email from Wheeler to Mesaros (00131)

    9.    1/22/13 email from Wheeler to Mesaros (00140)

    10-11. 1/17/13 emails between Wheeler and Mansour (00179)

    12.     Legal bills from counsel to Defendants (00265-70)

    13.     April to August 2013 claim notes (00272) (seven entries)

    14.     2/12/13 claim note (00272)

    15.     1/29/13 claim note (00273)

Defendants claim work product protection as to all redactions, and assert the attorney-client privilege for the redactions in items 1-5, 8-9, 12-13, and 15 of the privilege log. Docs. 76 at 4-5, 76-1 at 2-3.

## II. Work Product.

Because the work product doctrine is a limitation on discovery, and not an evidentiary privilege, federal law governs its application. *City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. CV-12-380-PHX-BSB, 2013 WL 1797308, at *11 (D. Ariz. Apr. 29, 2013). To qualify for work product protection against discovery under Federal Rule of Civil Procedure 26(b)(3)(A), "documents must have two characteristics: (1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (citation omitted). "The primary purpose of the work product doctrine is to 'prevent exploitation of a party's efforts in preparing for litigation.'" *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (citation omitted).

Materials prepared as part of insurance claim investigations "are generally not considered work product due to the industry's need to investigate claims." *Moe v. Sys. Transport, Inc.*, 270 F.R.D. 613, 624 (D. Mont. 2010) (citation omitted). In the context of claim disputes, however, "the nature of the insurer's activity may eventually develop into activity undertaken in anticipation of litigation where a sufficient degree of adversity arises between the insurer and the insured or claimant." *Id.* at 625. An insurer's activity shifts from the ordinary course of business to anticipation of litigation when, "in light of the nature of the document and the factual situation in the particular case, the document

can fairly be said to have been prepared or obtained *because of the prospect of litigation.*" *Id.* (emphasis in original); *see In re Grand Jury Subpoena*, 357 F.3d at 907 (joining other circuits in employing the "because of" standard).

The "because of" standard is met, Defendants contend, where the insurer identifies a "critical factor" which made it anticipate litigation. Doc. 76 at 6 (citing *Moe*, 270 F.R.D. at 625). Defendants assert that the critical factor in this case occurred on January 22, 2013, when Defendants contacted counsel for advice because the prospect of not accepting the tender of defense became evident from a review of the first amended complaint. *Id.* at 7. Defendants note that by February 4, they were preparing a position letter to deny coverage. *Id.* During this time frame, Defendants assert, "there was 'a sufficient degree of adversity between the insurer and the insured' that the prospect of litigation was evident." *Id.* (quoting *Moe*, 270 F.R.D. at 625).

But where "an insurer has not yet formally denied a claim, the insurer 'bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate.'" *Moe*, 270 F.R.D. at 625 (citation omitted). In this case, Defendants did not formally deny coverage until February 13, when they sent the position letter to Plaintiffs' counsel. Docs. 76-3 at 2-7, 79 at 3. Defendants assert that the prospect of not accepting the tender of defense became evident a few weeks earlier, but present no evidence in support of this assertion. It is clear from the email exchanges and privilege log that the coverage decision was still under consideration after the purported January 22 "critical factor" date. On January 28, Ms. Wheeler emailed Plaintiffs' counsel stating that the "coverage investigation is ongoing." Doc. 79-2 at 7. She informed counsel on February 7 that she "hope[d] to have a position letter out to [him by] the end of this week." *Id.* at 2. The privilege log identifies emails and claim notes dated February 12 – one day before issuance of the position letter – as including "thoughts on coverage analysis." Docs. 76 at 3, 76-1 at 2-3. In short, Defendants have presented no specific evidence showing "a resolve to litigate" the coverage issue before formally denying the claim on February 13. *Moe*, 270 F.R.D. at 625.

Moreover, "[t]he party asserting the work product doctrine has the burden of establishing, *for each document*, the rule's application." *Id.* (emphasis in original). Defendants make no effort to establish the doctrine for any particular document. Instead, Defendants assert in a parenthetical that the doctrine applies generally to all fifteen redactions. Doc. 76 at 5. This simple assertion is insufficient. *See Moe*, 270 F.R.D. at 625 ("System Transport has wholly failed to meet its burden of proving that the documents it withheld based on the work product doctrine were all created in anticipation of litigation. Its assertion that litigation was anticipated is based solely on the motor vehicle accident that gave rise to Moe's personal injury claims.").

Defendants' reliance on *Brown v. Superior Court*, 670 P.2d 725 (Ariz. 1983), is misplaced. The insurance company in that case, Continental National Assurance, did not take the position that it anticipated litigation before formally denying the claim. The court specifically noted that although Continental "had made a claims investigation, . . . Continental's business is handling claims, and not every . . . claim gives rise to an anticipation of litigation[.]" 670 P.2d at 733. It was only after Continental denied the claim and retained counsel that it could have reasonably concluded that litigation "was not merely possible, but quite probable." *Id.* at 733-44.

In summary, the Court finds that Defendants have failed to meet their burden of establishing work product protection for the redacted materials.

**III. Attorney-Client Privilege.**

**A. Implied Waiver.**

Federal courts look to state law to determine the applicability of evidentiary privileges to discovery disputes in diversity actions. Fed. R. Evid. 501. Because this case is brought under Arizona law based on diversity jurisdiction, the Court will apply Arizona law to the attorney-client privilege issue.

In *State Farm v. Lee*, 13 P.3d 1169 (Ariz. 2000), the Arizona Supreme Court addressed the applicable standard for determining the existence of an implied waiver of the attorney-client privilege in cases where the mental state of a litigant is at issue.

*Lee* held that when the litigant "claiming the privilege *relies* on and advances as a claim or defense a subjective and allegedly reasonable evaluation of the law – but an evaluation that necessarily incorporates what the litigant learned from its lawyer – the communication is discoverable[.]" 13 P.3d at 58 (emphasis in original).

In this case, Defendants' Rule 30(b)(6) witness, Mr. Applebee, stated the following during his deposition:

> Q. And did your company rely on the views of coverage counsel in making its ultimate decision?
>
> A. Well, it's a collaborative approach. So I would not agree with the phrase "rely on." I would say we discussed –
>
> Q. I'm not asking what you discussed. I'm asking –
>
> A. We did not rely on.
>
> Q. Did you consider as one element of your analysis the view given to you by coverage counsel?
>
> A. Yes.

Doc. 79-1 at 74. The parties dispute whether this testimony is sufficient to show an implied waiver of the attorney-client privilege under *Lee*. Plaintiffs contend that consideration of counsel's advice as part of a collaborative approach in making the coverage decision constitutes a waiver of the privilege. Doc. 79 at 4. Defendants concede that they considered counsel's advice as one element of their coverage analysis, but argue that this is not enough to create an implied waiver. Doc. 76 at 5. The Court agrees with Defendants.

*Lee* made clear that conferring with counsel and basing the coverage decision in part on counsel's advice is not enough to impliedly waive the privilege:

> We assume client and counsel will confer in every case, trading information for advice. This does not waive the privilege. We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege. Based on counsel's advice, the client will always have subjective

> evaluations of its claims and defenses. This does not waive the privilege. All of this occurred in the present case, and none of it, separately or together, created an implied waiver.

13 P.3d at 66. An implied waiver occurred in *Lee* only because the case had "one more factor – State Farm claim[ed] its actions were the result of its reasonable and good-faith belief that its conduct was permitted by law ***and*** its subjective belief based on its claims agents' investigation into and evaluation of the law." *Id.* (emphasis in original). The investigation and evaluation included advice received from a number of lawyers. It was "the last element, combined with the others, that impliedly waive[d] the privilege." *Id.*

Thus, to waive the privilege under *Lee*, "something more is required" than merely consulting with counsel and taking action based on the advice received. *Everest Indem. Ins. Co. v. Rea*, 342 P.3d 417, 419 (Ariz. Ct. App. 2015). The privilege "is impliedly waived only when the litigant asserts a claim or defense that is *dependent* upon the advice or consultation of counsel[.]" *Id.* (emphasis in original).

In this case, Defendants have not asserted a defense that their conduct was the result of their reasonable and good faith belief that the conduct was permitted by law, based on an investigation into the law, *see Lee*, 13 P.3d at 66, or that any such beliefs were dependent on advice of counsel, *see Everest*, 342 at 419. On the present record, the "something more" required for an implied waiver under *Lee* is missing.

Plaintiffs note that shortly after receipt of the tender letter, Ms. Wheeler sent an email to Mr. Mansour stating that she thought it would "be necessary to seek review by coverage counsel," and forwarded the letter to Ms. Mesaros for review. Docs. 79 at 4, 79-2 at 3-4. But as explained above, obtaining advice from counsel and taking action based on such advice is not enough to waive the privilege. *See Lee*, 13 P.3d at 66.

Plaintiffs cite *Roehrs v. Minnesota Life Insurance Co.*, 228 F.R.D. 642, 646-47 (D. Ariz. 2005), which found an implied waiver where the claims adjusters purportedly relied on legal opinions and investigations in denying coverage. Doc. 79 at 2-3. But the decision in *Roehrs* is not controlling. For reasons stated above, the Court cannot find an

implied waiver under Arizona law in this case.[1]

**B.  Production of the Privilege Log.**

Plaintiffs claim that Defendants waived the attorney-client privilege by failing to timely produce a privilege log. Doc. 79 at 5 (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for the Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005)). *Burlington* makes clear that that there is no "*per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." 408 F.3d at 1149. Instead, courts should engage in a "holistic reasonableness analysis" and make a case-by-case determination based on various factors, including the delay in producing the privilege log, the magnitude of the document production, and the degree to which the assertion of privilege enables the adverse party to evaluate whether the withheld documents are privileged. *Id.*

Having considered the relevant factors and the record as a whole, the Court does not find that Defendants' failure to timely provide a privilege log waived the privilege. Defendants asserted the privilege and produced the redacted documents on January 12, 2018. Doc. 79-3 at 3-4. Defendants state that a clerical error may have caused the attendant privilege log from being included with the production, but the log was provided to Plaintiffs by mid-March. Doc. 76 at 2. The claim file and privilege log were each relatively small (274 and 19 pages, respectively), but it does not appear that the delay in providing the log was intentional or meant "as a tactical manipulation of the rules and the discovery process." *Burlington*, 408 F.3d at 1149. Nor does the privilege log preclude Plaintiffs from challenging the assertion of privilege, as their memorandum demonstrates. Doc. 79. In the absence of aggravating factors, the delay in producing the privilege log does not constitute a waiver. *See Burlington*, 408 F.3d at 1149 (finding waiver where the defendant engaged in gamesmanship by producing a deficient privilege log five months

---

[1] The claims adjusters in *Roehrs* testified that the denial of coverage was based in part on the legal investigation of the claim. 228 F.R.D. 647 n.8. They also considered factual and medical investigations, opinions of their supervisors, and policy terms. *Id.* The Court is not convinced that mere consideration of the legal investigation in making the coverage decision in *Roehrs* was sufficient to constitute an implied waiver under *Lee*.

- 8 -

late and thereafter made changes to the log).

### C. Rule 612.

Finally, Plaintiffs cite Federal Rule of Evidence 612 for the proposition that an adverse party is entitled to documents used to refresh a witness's recollection before testifying. Doc. 79 at 6. Plaintiffs claim that Defendants waived the attorney-client privilege because Mr. Applebee reviewed the unredacted claim file in preparing for his deposition. *Id.*

"Although applicable to depositions, Rule 612 is a rule of evidence, and not a rule of discovery. Its sole purpose is evidentiary in function 'to promote the search of credibility and memory.'" *Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir. 1985) (quoting Fed. R. Evid. 612 advisory committee notes to 1972 proposed rules). An adverse party is entitled to production of a document used by a witness to refresh memory before testifying only where the court decides that justice so requires. Fed. R. Evid. 612(a)(2); *see Goldman v. United States*, 316 U.S. 129, 132 (1942) (noting that "where a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced"); H.R. Rep. No. 93-650, 93d Cong., 1st Sess. (1973) (citing *Goldman* and noting that Rule 612 was amended to render the production of documents used by a witness before testifying discretionary with the court to guard against "fishing expeditions among a multitude of papers which a witness may have used in preparing for trial").

In this case, the Court does not find that justice requires production of the claim file documents to which the attorney-client privilege applies. Under Rule 612, "the relevant inquiry is not simply whether the documents were used to refresh the witness's recollection, but rather whether the documents were used in a manner which waived the attorney-client privilege." *Suss v. MSX Int'l Eng. Servs., Inc.*, 212 F.R.D. 159, 164 (S.D.N.Y. 2002). For example, a waiver may occur if privileged documents are disclosed to an individual outside the privileged relationship. *Id.* The privilege is not lost, however, where the witness reviews his own privileged documents. *Id.*

This approach is consistent with the language of Rule 612. Although the rule confers discretion on district courts to require production when documents are reviewed before testifying, it does not purport to change the law with respect to privilege. Indeed, the advisory committee notes make clear that nothing in the rule should "be construed as barring the assertion of a privilege[.]" Fed. R. Evid. 612 advisory committee notes to 1974 enactment. "Thus, any discretion used by the court should take into account the particular privilege being asserted." *Suss*, 212 F.R.D. at 164.

In his role as a Rule 30(b)(6) witness, Mr. Applebee reviewed the unredacted claim file to prepare for his deposition. But this review, standing alone, does not constitute a waiver of the attorney-client privilege. Plaintiffs do not dispute that Mr. Applebee was within the zone of privilege when he reviewed the claim file. Nor have Plaintiffs shown that the manner of review somehow results in a waiver of the privilege.

In short, Plaintiffs have not shown that production of the privileged claim file materials is necessary in the interests of justice. *See Suss*, 212 F.R.D. at 165 (finding no waiver where the privileged documents were restricted to individuals covered by the privilege); *Stamps.com, Inc. v. Endicia, Inc.*, No. CV 06-7499-ODW(CTx), 2008 WL 11338241, at *6 (C.D. Cal. Oct. 6, 2008) (refusing to order production under Rule 612 where "there [was] no indication that [the witness's] review of unredacted versions of any particular document constituted a waiver of privilege"); *In re Managed Care Litig.*, 415 F. Supp. 2d 1378, 1380-81 (S.D. Fla. 2006) (denying motion to compel privileged document reviewed in preparation for deposition).

Plaintiffs note that some courts have applied an automatic waiver of the privilege under Rule 612. Doc. 79 at 7 (citing cases). This view has been subject to some criticism. When the rule "is applied to require production in every instance in which a deponent uses a document to refresh his or her memory prior to testifying, the distinction between refreshment during and before testifying is, for all intents and purposes, eliminated." *Derderian v. Polaroid*, 121 F.R.D. 13, 16 (D. Mass. 1988). Thus, there is

no exercise of the discretion which Congress intended courts to use in determining whether, in fact, justice requires disclosure of documents reviewed before testifying. *See id.* The Court declines to apply an automatic waiver.

**IV.     Conclusion.**

Defendants have not established work product protection for the redacted portions of the claims file, but have not waived – impliedly or otherwise – the attorney-client privilege for the redactions in items 1-5, 8-9, 12-13, and 15 of the privilege log. *See* Docs. 76 at 3-4, 76-1 at 2-3.

**IT IS ORDERED** that Defendants shall produce unredacted versions of the documents identified in items 6, 7, 10, 11, and 14 of the privilege log by **April 23, 2018**.

Dated this 19th day of April, 2018.

David G. Campbell
United States District Judge